FLEMING et v STEUBENVILLE (city) et

Ohio Appeals, 7th Dist, Jefferson Co

Decided May 21, 1931

Roy N. Merryman, Steubenville, and Carl A. Weinmann, Steubenville, for plaintiffs.

Amanda Z. Strayer, City Solicitor, Steubenville, James S. Kimble, and Carl H. Smith, Steubenville, for defendants.

ROBERTS, J.

It is contended by the plaintiffs as follows:

"First, that where the center line of the original highway can be ascertained, then it must be adhered to, and the street or highway cannot be arbitrarily located elsewhere. Plaintiffs contend that the center line of the street can be and has been located."

This is denied by the defendant city. A line was sought to be established by civil engineers representing these parties, and the testimony of some of these engineers appears reasonable to this court, to the effect that by reason of the fact that there are no records of the variation of the compasses in these different surveys, made many years ago, and no monuments or anything else to indicate the original location, the center line may not be determined with absolute certainty. And it is contended by the defendant that it is not important, or a lessening of its rights to a street of sixty-six feet in width, that the street does not precisely at all points follow the line as may be best determined by a survey of the center of the road, but that it may follow the highway as used for substantially one hundren years.

"Second," it is contended that "plaintiffs are entitled to a permanent injunction, un-

der the doctrine of equitable estoppel, for the reason that the city, as well as all other public authorities, stood by and permitted them to improve their properties as they have done, and said city has also made its own improvements in conformity thereto, and in addition has accepted and placed on record the plat of the Smith Subdivision, which is also in conformity to the claims of these plaintiffs."

"Third, that the defendants are also prohibited from claiming any right to a portion of the property of the plaintiffs without appropriating the same according to law, for the reason plaintiffs and their predecessors in title have held and improved their said premises, adversely to defendant city, for more than twenty-one years, thereby creating an equitable estoppel against the defendants in reference thereto."

"Fourth, that under the facts already stated, plaintiffs have acquired said property claimed by defendant city, by adverse possession against the defendant city."

So far as the proposition of adverse possession is concerned, although it has been briefed by counsel to some extent, we understand that it is not now contended for; that the plaintiffs base their right to a restraining order in this case upon the proposition that they are entitled thereto by reason of equitable estoppel.

The law seems to be quite well settled that adverse possession may not be successfully asserted against a municipality or public authorities.

A large number of authorities have been cited upon either side of this case, which have been carefully examined. It may be suggested that counsel for the plaintiffs express much satisfaction in the case of **Joseph v City of Akron, 19 Oh Ap, 412,** and the city has found consolation in the case of **City of Gallipolis v Gallia County Fair Company, 34 Oh Ap, 116, 170 NE, 174, (7 Abs 509).** We will not further comment upon these cases because, by reason of the differing conditions in those cases from those existing in the one in issue, we are unable to reach the conclusion that they are of any particular importance in the determination of the issues presented.

The proposition in dispute, and practically the only one, is whether the facts, or what may be considered as such by the evidence, are sufficient to give these plaintiffs a right of injunction preventing the making of this improvement, on the principles of equitable estoppel. In considering this it will be noticed that sometimes the

authorities speak of equitable estoppel, and sometimes speak of estoppel in pais, which terms seem to have been commingled in the authorities without any definite, established difference.

Reading from 21 Corpus Juris, commencing on page 1113, some information may be derived concerning equitable estoppel: "Estoppel by misrepresentation, or equitable estoppel, is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."

Continuing, on page 1119: "In order to constitute this kind of estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice."

And on page 1125 it is said: "No estoppel arises where the representation or conduct of the party sought to be estopped is due to ignorance founded upon an innocent mistake."

In the case of **Ensel v Levy & Brother, 46 Oh St, 255, 19 NE, 597,** Judge Spear, in the opinion, at page 260, after quoting and commenting upon several other Ohio decisions and other authorities, uses this language: "From the foregoing, it is fair to assume that where one, by his acts or declarations, made deliberately and with knowledge, induces another to believe certain facts to exist, and that other rightfully acts on the belief so induced, and is misled thereby, the former is estopped to afterwards set up a claim based upon facts inconsistent with the facts so relied upon, to the injury of the person so misled. Applying this rule

reasonably to the case at bar, what answer should be made to the demand that new conditions as to delivery shall now be attached to the receipts?"

Reading now from the case of **McClelland v Miller, 28 Oh St, 488, at page 502,** which relates to a change in the width of the street as compared with that previously occupied: "It is further claimed by plaintiff in error that he has had possession of this strip of ground, which he has inclosed, for more than twenty-one years, and he therefore has title thereto. This position is answered by the case of **Lane v Kennedy, 13 Oh St, 42.** The doctrine of that case is that the mere inclosing of a part of a highway by a fence, does not necessarily constitute such adverse possession, as against the public, as will confer title by mere lapse of time. When roads are laid out and travel is limited, necessity may not require that the whole width should be opened when a less quantity answers every purpose. But the fact that a portion of the highway remains in the possession of adjoining owners, is merely matter of sufferance, from which rights can not accrue."

Attention is also directed to the second volume of Elliott on Roads and Streets (4th Ed.), page 1696, §1189, and this is quoted at some length because, under the title of Equitable Estoppel, it discusses matters quite pertinent for the consideration and determination of the issues in this case: "It has been held that non-user is evidence of abandonment; and many of the courts, influenced, perhaps, by the hardships that would result from a contrary holding in the particular cases under consideration, have applied the doctrine of equitable estoppel where the claimant had made expensive improvements and acquired, or apparently acquired, rights of such a nature and under such circumstances that to deprive him of them seemed highly inequitable and unjust. We doubt, however, if the doctrine of some, if not most, of these cases can be sustained upon principle, at least where the city or the local authorities have done no affirmative act to mislead the claimant. It is difficult to conceive upon what principle an equitable estoppel can be securely placed in such cases, for the person who encroaches upon a public way must know, as a matter of law, that the way belongs to the public, and that the local authorities can neither directly nor indirectly alien the way, and that they can not divert it to a private use. As the person who uses the highway must possess this knowledge, and in legal contemplation does possess it, one

of the chief elements of an estoppel is absent. An estoppel can not exist where the knowledge of both parties is equal and nothing is done by the one to mislead the other. In addition to this consideration may be noted another influential one already suggested in a different connection, and that is, the private use of the public way was wrong in the beginning and wrong each day of its continuance, and it is a strange perversion of principle to declare that one who bases his claim on an original and continued wrong may successfully appeal to equity to sanction and establish such a claim. It is, at all events, a great stretch of the doctrine of estoppel and a wide departure from the rule laid down by the earlier decisions and confirmed by many of the modern authorities. And even in states in which the general doctrine of equitable estoppel is recognized and applied in particular cases it is generally held that mere encroachment on a highway by a fence or the like, especially if not of such a character as to charge the municipality with notice, will not estop the public from asserting its right to the land actually belonging to the highway. The mere fact that there is such an encroachment or possession or that the public officials saw or might have seen some improvement in course of construction where the municipality has done nothing to induce it or mislead is usually, and we think correctly, held insufficient. It may be, however, that where there has been an abandonment or there have been misleading acts or other peculiar circumstances, as in some of the cases cited in the first two notes to this section, and improvements have been made and rights acquired on the faith thereof, such a case may be made as will justify the application of the doctrine of estoppel."

Numerous citations are made in above section, and from the authorities read or cited we may learn what is necessary to constitute equitable estoppel; that there must be some wrongful advantage taken, by an attempt to defraud, to mislead, or to deceive; possession of superior knowledge to that of the other party; and that the other party, without as great or sufficient knowledge, has been misled and deceived, with loss or injury as the result.

What are the facts in the case under consideration? Primarily it is reasonable to assume that the very reason these people bought land and built their residences on this hill to the westward of this city was because they were induced by an anticipation of that which has actually resulted

and culminated in the necessity now claimed for these improvements; that is, they went out there because they considered it a desirable part of the city for residence, in the direction in which the city would presumably grow, whereby their property would become enhanced in value and become very desirable property. The accomplishment and realization of those conditions have resulted in the determination by the public authorities that, due to the increased extent of locomotion, in speed and volume, for the safety and convenience of the public, a necessity has arisen for a wider and better road, and better surroundings generally, for the amelioration of these conditions.

That this road was originally laid out, as provided by law, to be sixty-six feet in width, does not seem to be disputed. At that early time sixty-six feet was not necessary, and it was an added burden to improve a road for travel, so far as the beaten path was concerned, to a greater extent than was reasonably necessary for use. So the road was not opened to its fullest extent for years, along this line from Cambridge to Steubenville, and has not, at the location here in question, been fully opened, but the authorities, acting in their discretion, have determined that it shall now be widened.

It is asserted that this widening of the street will not exceed thirty-three feet on either side of the center line of the street as now occupied and used, and the conclusion to be reached in this case is based upon that assumption.

Assuming that to be a fact, the city is not going outside of the lines of the street as originally authorized and established by law, and here we find a distinction, as compared with the usual run of cases and authorities, which as a rule involve conditions where there has been an encroachment upon the street itself, or an encroachment by the street upon the abutting land.

The plaintiffs in this action are complaining because the complacence of the city, perhaps, permitted them to occupy that part of the road within the sixty-six foot limit, which the city, or the public, had not needed or occupied. Because they were not prevented, because no objection was made to their so doing, they made improvements and expended money in establishing their homes and adorning their yards for beauty and utility, and now feel that the city should not be permitted to intrude upon those improvements.

Time will not be taken to read the authorities which have been cited to the effect

that, where a street or a road does not precisely follow the original road lines as laid out, it is not an important proposition that the street or the road does not extend to the limits of the street, as determined. That mistakes were made and deviations occurred in early times when roads were laid out through the woods and over the hills is not strange.

It is apparent that this was a sixty-six foot road, although the center line of the road may not at all points be determined by bearings, distances, or monuments, and this road has been continually in use as now occupied for about one hundred years. Its location and all of the facts important for consideration relating thereto were just as accessible to the knowledge of the individuals who now complain and are abutting upon this road as they were to the general public of which these individuals constitute a part.

The Legislature fixed the width of the street, and the records which have been placed in evidence indicate the location and survey thereof. There is nothing to indicate that there ever was anything said by the city authorities to mislead these people as to the location of the street; or anything said as to whether the public would ever desire, or not, the use of the full width between its limits; or that these people, if they improved up to the occupied part, might have an assurance of continued possession. It was perhaps simply a matter of complacence of conditions on either side.

Nowhere in this case do we find false or misleading statements or representations or inducements held out, or anything done on the part of the city to mislead these abutting owners to their prejudice.

The city authorities had no more knowledge, and no more knowledge was accessible to them, than could be obtained in the same manner and by the same degree of diligence by the abutting owners.

In 1926 certain improvements were made and paid for by these abutting owners. It is not disputed, however, that, so far as any change may be contemplated by the city, the city proposes, and the money has been appropriated for that purpose, that the abutting owners will not be put to additional expense for the sidewalks, or change of grades, or for any other purpose.

After a careful consideration of the evidence in this case, and applying thereto the authorities, the rules and decisions which have been accessible, we find that the facts in this case do not come within that which may be properly recognized as

the equitable estoppel rule, by the exercise of which the public authorities may be enjoined from proceeding with this improvement, and the finding of this court is therefore in favor of the defendants. The plaintiffs are not entitled to relief in this action.

Judgment for defendants.

POLLOCK and FARR, JJ, concur.