**FIRST REGULAR BAPTIST CHURCH OF FRANKLIN, OHIO, Plaintiff-Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.**

**No. 20740.**

United States Court of Appeals, Sixth Circuit.

June 8, 1971.

Rehearing Denied and as Amended July 9, 1971.

Edwards, Circuit Judge, filed dissenting opinion.

James Gustin, Cincinnati, Ohio, for appellant.

Edward J. Utz, Cincinnati, Ohio, on brief.

George H. Elliott, Middletown, Ohio, for appellee; George H. Elliott, Elliott & Boyd, Middletown, Ohio, James D. Ruppert, Ruppert, Kirby & Powers, Franklin, Ohio, on brief.

Before WEICK, EDWARDS and BROOKS, Circuit Judges.

WEICK, Circuit Judge.

The only issue in this appeal is whether the Insurance Company is estopped from invoking the 90% co-insurance clause in a fire insurance policy.

The Church owned a structure in Franklin, Ohio, consisting of a sanctuary building of the vintage of 1893, which was connected to a new educational building constructed in 1964, at a cost of $300,000.

Prior to the issuance of the policy of fire insurance in suit, the insurance business of the church had been divided between two insurance agents, Carl Morgan and Fred Meeker, both of whom were members of the church. The insurance on the sanctuary building totaled $125,000. Insurance on the education building totaled $300,000. Meeker wrote two-thirds of the insurance on the sanctuary, in seven or eight policies; Morgan wrote one-third of the insurance on the sanctuary in a number of policies, plus the coverage on the new education building. Meeker had written insurance policies for the church since 1921, and prior to that time his father had the church's insurance business.

Meeker proposed to Morgan that the church, instead of having so many policies of insurance, should have one package policy, and that it should receive bids for the business; Morgan agreed. Meeker also discussed his proposal with the pastor of the church, and told him that his company wrote a policy with broad coverage providing for replacement without depreciation.

Meeker appeared before a meeting of the trustees of the church and the trustees agreed to the proposal. Meeker also suggested that an appraisal of the sanctuary be made by his company, which suggestion was also approved by the trustees. The appraisal was made by Ronald Weaver, who was a special agent of the Insurance Company and was experienced in the appraisal of buildings for insurance purposes. Weaver was also a member of the church.

Weaver appraised the new education building at the full amount of its cost, $300,000. He appraised the sanctuary at $250,000. In making the appraisal of the sanctuary, he examined the building, took measurements of it, and determined it had 197,600 cubic feet. He then used Beck's Manual, which was standard in the insurance industry, to obtain a value of $254,221, which figure was rounded off to $250,000-valuation.

Bids for the package policy were submitted by Meeker and Morgan.[1] Meeker's bid of $687-annual premium was low, and he was awarded the business. Morgan's bid was twice the amount of Meeker's bid.

The policy in suit was then written for $570,000, which included $20,000 covering contents of the buildings. The policy contained a ninety per cent co-insurance clause which provided:

"This Company shall not be liable for a greater proportion of any loss or damage than the amount hereby insured [$570,000] bears to * * * [90%] of the actual cash value of the property at the time of the loss."

The policy was delivered to and accepted by the church.

Meeker's recollection was that the other policies that he had previously written contained co-insurance clauses. The evidence was to the effect that most industrial and church properties were insured by policies with co-insurance clauses. The use of such clauses resulted in substantial savings in premiums, ranging from 15% to as much as 80%

on insurance covering fireproof buildings. The purpose of the co-insurance is to require the insured to carry insurance for the full value of the property. Where the property is under-insured, the insured is required to assume his proportionate share of the loss.

On June 19, 1965 a fire, caused by arson, totally destroyed the sanctuary and partially damaged the education building. The parties were unable to agree on the amount payable under the policy, and arbitration was invoked. The arbitrators determined the total value of the buildings and contents at the time of the fire was $855,016.19, and that the partial loss sustained amounted to $574,935.36.

The Insurance Company then invoked the 90% co-insurance clause in the policy, using the following equation:

$$\frac{\$570,000 \text{ (amount of insurance)}}{\$769,514 \text{ (90\% of full replacement value)}} \times \$574,935.36 \text{ (actual loss)} = \$425,810$$

The Insurance Company added $4,529.50, additional expenses not covered by the co-insurance clause, and paid $430,399.78 to the church. The church was not satisfied with payment of this amount and instituted the present action to recover the difference between the amount of the payment and $570,000 which was the face amount of the policy. The District Court, applying the doctrine of equitable estoppel, entered judgment against the Company in the full amount of $144,129.72, plus interest.

It was the theory of the church that the insurer was estopped to invoke the 90% co-insurance clause because it had appraised the sanctuary too low and had used the appraisal in fixing the face amount of the policy. The only proof offered, however, to establish the claim that Weaver's appraisal was too low was the award of the arbitrators as to the value of the property more than a year later.

1. At that time Morgan was selling his insurance agency to Ralph E. Wade.

The District Court in its findings of fact found that both agents (Meeker and Morgan) in their handling of the insurance "proceeded in good faith." It found: "There is no claim here of fraud or mistake."

The Court further found:

"So, insofar as this case involves this question—and it does, because of about $2,000 of it does—there is no fraud here. There is not even the slightest evidence of fraud, let alone clear and convincing evidence. There is no evidence that the insurance company or anybody connected with [15] it either defrauded or tried to defraud this church, and there is no evidence that either the insurance agent or both of them or anybody connected with the church made any effort to defraud the Insurance Company of North America, and there is no mutual mistake in a legal sense.

"There was a mutual mistake in a matter of opinion in the valuation of this building. There isn't any question about that, but that is in a matter of opinion; it doesn't amount to any false representation, doesn't amount to any law-sense mutual mistake. So that insofar as this case involved the question of whether or not this Court could change this policy so as to substitute a figure for the $570,000 figure appearing on page 1, the answer is this Court cannot, nor can this Court delete the coinsurance clause because of the conclusive presumption of knowledge which the Supreme Court of Ohio has dictated and to which this Court, of course, must be obedient."

The Court concluded:

"So the problem boils down to: May an insurance company that agrees to the valuation on page 1 contest that valuation under a coinsurance clause on page 4? It's the conclusion of law of this Court that, having so agreed, the company may not."

It is the church rather than the Insurance Company which is contesting the valuation of $570,000 (face amount of the policy). The annual premium of $687 was computed on this amount. The church contends that the property should have been appraised at $855,016.-19 (the appraisal by the arbitrators, made more than a year later) and that this amount should have been the face amount of the policy. The difference between the two appraisals is $285,016.19. The church, however, paid no premium for a valuation in excess of $570,000.

The findings of fact, in our opinion, compel a conclusion different than that reached by the District Judge.

There was not an iota of evidence offered by the church that Mr. Weaver, in making the appraisal of the sanctuary, was negligent or that he made a mistake or that Beck's Manual, which he used and which is standard in the insurance industry, was improper to use in making the appraisal. Nor is there any evidence that the trustees of the church were ignorant, did not know what they were doing, or were imposed on by Meeker and Weaver, who were loyal members of the church. It was Meeker who equipped the new chapel.

The District Court's conclusion is based entirely on the fact that the arbitrators, more than a year later, arrived at a replacement value which was much higher than Weaver's earlier appraisal, and the fact that there was no proof of any value change during the intervening period.

The burden of proof to establish estoppel, however, was on the church, and it is clear that the church failed to meet its burden. It must be remembered that the arbitrators on May 3, 1967, nearly three years after Weaver's appraisal, appraised the property as of the date of the fire, June 19, 1965, and that the church did more than merely replace its old sanctuary with a comparable new one.

Mr. Weaver testified on cross-examination:

"Q How many cubic foot are in the present edifice, approximately?

"A   I couldn't answer that question. I think it's bigger; yes, sir.

"Q   I see. And the ceilings and so forth are bigger, deeper?

"A   Yes. The edifice that's now standing where the old church did doesn't resemble the old church in any way shape or form.

"Q   In other words, there is no comparison between the present church and the old church?

"A   No, sir."

The new sanctuary was not completed and occupied until November 2, 1969.

Furthermore, if we are to indulge in drawing inferences, it is equally as probable that the arbitrators arrived at a valuation too high, as it is to infer that Weaver's appraisal was too low. But estoppel may not be established by mere inferences. We also know that opposing appraisers who testify in court do not always arrive at the same figure.

Insofar as Mr. Weaver's appraisal of the sanctuary is concerned, it was in an amount which was twice the amount of insurance previously carried on the sanctuary; and Mr. Weaver appraised the new education building at the full amount of its cost.

Section 3929.25, Ohio Revised Code, provides:

"A person, company, or association insuring any building or structure against loss or damage by fire or lightning, by renewal of a policy, shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by said agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid."

Special Agent Weaver literally complied with this statute in making the appraisal. No estoppel can operate, therefore, against the insurer merely because it complied with the Ohio law.

The only purpose of the statute's requirement of inspection and appraisal was to fix a liability on the insurer for payment of the whole amount of the policy of insurance in case of a total loss. There the loss was only partial. The District Court held that the church was bound by the co-insurance clause except for the estoppel. There was no evidence that the church objected to Weaver's appraisal. If the church was dissatisfied with Weaver's appraisal, there was nothing to prevent it from having the structure appraised by another appraiser.

■■■ In order to constitute equitable estoppel in Ohio, there must exist a false representation or concealment of material facts, and it must have been made with knowledge, actual or constructive, of the facts. No estoppel will arise where the representation or conduct of the party sought to be estopped is due to ignorance founded upon an innocent mistake.[2] Fleming v. City of Steubenville, 44 Ohio App. 121, 125, 126, 184 N.E. 701 (1931); New York Central R. R. v. General Motors Corp., 182 F.Supp. 273, 286 (N.D.Ohio, 1960); 20 Ohio Jur.2d, Estoppel and Waiver, § 35.

The judgment of the District Court is reversed and the cause is remanded with instructions to dismiss the complaint.

EDWARDS, Circuit Judge (dissenting).

The District Judge, after trying the disputed issues of fact in this case, found that appellant insurance company had proposed the figure of $570,000 as

---

2. The dissent bases estoppel in pais on the ground that Weaver in his appraisal made a mistake. There was no proof that Weaver had made a mistake, but even if he had, unless it was a negligent mistake there could be no estoppel in pais, Beardsley v. Foot, 14 Ohio St. 414, 416 (1863), relied on in the dissent. Nor was there any proof that Weaver was negligent.

the full replacement value of the property to be insured:

"This Court finds as a fact that at that time Mr. Meeker, representing and an agent of the Insurance Company of North America, and the church agreed that in fact the '100 percent' valuation of those two buildings at that time was $570,000. The defendant 'proposed that' (Plaintiff's Exhibit 10) and proposed that value as the full one for inclusion in a 90 percent co-policy."

He also found as to the actual value at the time of loss:

"Now, the policy contains an arbitration clause and this matter went to arbitration for the fixation of two figures; A, the value of the church, replacement value, total replacement value of the church at the time of the loss in June of 1965 or nine days after the renewal. The arbitrators found that to be $855,000. The replacement cost under the loss payment clause on page 4 of the policy was determined by the arbitrators to be $574,935.76, that being the replacement cost of the partial loss which actually took place."

He then summarized the legal problem posed by the case as follows:

"So that Mr. Meeker for purposes of this policy was the Insurance Company of North America, and it was Mr. Meeker, we find as a fact, who suggested the insurable value which was acquiesced in and as a matter of contract was agreed on by the parties to this case in June of '64 and carried over in the renewal.

"So the problem boils down to: May an insurance [20] company that agrees to the valuation on page 1 contest that valuation under a coinsurance clause on page 4?"

The District Judge then held that under the facts outlined above appellant insurance company was estopped from reliance upon the 90% coinsurance clause as a limitation on recovery under the policy.

On this record it is undisputed that the $570,000 valuation in the policy resulted from appellant insurance company's appraisal and that Meeker (who was found by the District Judge to be agent of the insurance company) represented that figure as the 100% value to the plaintiff church and told the church that it could rely on that value and that the plaintiff church did so rely in signing the contract.

As the majority opinion holds, estoppel is a doctrine which generally requires a fraudulent representation, or intentional misrepresentation with knowledge, plus reliance by the opposite party to its damage. New York Central R.R. v. General Motors Corp., 182 F.Supp. 273, 288 (N.D.Ohio 1960); 20 Ohio Jur.2d Estoppel and Waiver § 35 (1956).

What is lacking in this case, of course, is the element of willful or fraudulent misrepresentation.

The law of Ohio also recognizes a form of estoppel called "estoppel in pais" under which statements made in good faith may furnish grounds for estoppel.

In the leading case on this subject the Supreme Court of Ohio held:

"Admissions in pais, though made in good faith, may yet be made under such circumstances as to operate by way of estoppel, and preclude the party from afterward gainsaying them." Beardsley v. Foot, 14 Ohio St. 414 (1863).

See also Union Ins. Co. of Dayton v. McGookey, 33 Ohio St. 555 (1878).

While Beardsley is an old case, it has recently been cited with approval by the Ohio Supreme Court. Mutual Finance Co. v. Politzer, 21 Ohio St.2d 177, 256 N.E.2d 606 (1970).

Where, as here, the access to information is substantially greater on the part of one party and that party both creates the mistake and urges the opposite party to rely thereon to its ultimate damage, I feel that Ohio law permits a court in equity to hold that the party basically responsible is estopped

from taking advantage of its own mistake.

In an opinion holding an insurance company was estopped from relying upon a written condition of the policy, the Ohio Supreme Court said:

"The tendency of many courts is to apply the principles of waiver and estoppel in a liberal manner to insurance contracts to enforce good faith and to prevent injustice and fraud where the insured has been misled by the acts of the insurer or its agents." Pannunzio v. Monumental Life Ins. Co., 168 Ohio St. 95, 106, 151 N.E.2d 545, 552 (1958).

I would affirm the judgment of the District Court.