Phyllis Ann THROPP, Plaintiff-Appellee,

v.

BACHE HALSEY STUART SHIELDS,
INCORPORATED,
Defendant-Appellant,

v.

Jack A. THROPP, Third-Party
Defendant-Appellee.

No. 79–3625.

United States Court of Appeals,
Sixth Circuit.

Argued July 9, 1980.

Decided May 27, 1981.

Richard C. Graham, Isaac, Graham & Nester, Frederick M. Isaac, Columbus, Ohio, for defendant-appellant.

Gary D. Greenwald, Schottenstein, Gabel, Suedlow & Zox, Columbus, Ohio, for Phyllis Ann Thropp.

Kenneth Gamble, Gamble & Drake, Columbus, Ohio, for third-party defendant-appellee.

Before KENNEDY, BOYCE F. MARTIN, Jr. and JONES, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Bache, Halsey Stuart Shields, Inc. (Bache) appeals a judgment in favor of Phyllis Thropp for breaches of fiduciary duty and contract, and conversion. Jurisdiction is based on diversity of citizenship and is uncontested. The principal issues on appeal are: 1) whether the District Court erred as a matter of law in concluding that Bache negligently mismanaged Mrs. Thropp's securities account; and 2) whether her claims are barred by laches. Upon review, we uphold the District Court's findings that Bache is liable to Mrs. Thropp for its negligence and that her claims are not barred by laches.

In this appeal, Bache contests virtually every finding of fact made by the District Court. In so doing, it invites us to reinterpret the evidence in a manner more favorable to Bache. However, the scope of our review is limited by the "clearly erroneous" standard of Rule 52(a), Federal Rules of Civil Procedure. With this stricture in mind, we have reviewed the entire record, and we conclude that none of the facts found by the District Court are clearly erroneous. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In the course of the trial, conflicts between Mrs. Thropp's testimony and that of Bache's witnesses inevitably raised questions of credibility. However, the District Court's resolution of those questions in Mrs. Thropp's favor was a proper exercise of its discretion.

The pertinent findings of the District Court follow. On June 21, 1971, Mrs. Thropp opened a margin trading account with Bache, placing in its care securities worth approximately $40,000.00. Mrs. Thropp's husband Jack encouraged her to open the account through his friend Richard Gregory, a broker in Bache's Columbus, Ohio office.

Mrs. Thropp is not a sophisticated investor. Although she has owned securities for

many years, she has always relied on the investment acumen of her father and other advisors. She expected Gregory to manage her account and make investment decisions on her behalf.

Mrs. Thropp opened the Bache account in her name alone, although her husband was present at her initial meeting with Gregory. She did not indicate to Gregory that he was authorized to discuss the account with Mr. Thropp, nor did she mention giving Mr. Thropp a power of attorney over the account. Subsequently, however, Jack Thropp forged his wife's signature on a completely blank power of attorney form, which he then either mailed or delivered to Gregory.

Between September 21, 1971 and April 21, 1972, Jack Thropp ordered Gregory to sell his wife's stock for cash, in a series of transactions which eventually depleted the margin account. During this seven-month period, Mr. Thropp ordered Bache to issue seven checks in his wife's name, which he picked up at Bache's operations section. He then forged his wife's endorsement, cashed the checks, and spent the money.

Bache's internal operating rules require brokers to keep a "booksheet" for each customer account. This document contains the name of the account owner and a record of account transactions. A separate booksheet, bearing on its face the notation "Not a Client," must be kept for any person holding a power of attorney over another's account. Gregory failed to keep a separate booksheet with a proper notation for Thropp's power of attorney until September, 1972, when he asked Thropp to "update" his power of attorney. All seven checks that depleted Mrs. Thropp's account were drawn and cashed before September, 1972, on the strength of the invalid power of attorney. Gregory also failed to process the power of attorney form according to standard Bache procedures which required him to transmit a copy of the notarized form to the New York office.

Mrs. Thropp and her husband often saw Gregory socially. She frequently questioned him about her account, wanting to know "how it was doing." Gregory always gave vague, general answers about the condition of the stock market. He never mentioned the numerous sales for cash.

Mrs. Thropp inadvertently discovered her husband's forgeries in December, 1972, when she found a letter from Bache addressed to Jack Thropp. She opened it and found inside a blank form which apparently required Mr. Thropp's signature. She called Gregory at once to ask why Bache had sent correspondence to her husband, and why her account balance seemed low. Gregory refused to discuss the matter and told her to talk to Mr. Thropp.

When Mrs. Thropp confronted her husband, he "confessed" that he had stolen nearly $40,000.00 from her account and had used the money to pay his gambling debts. He also told her that he held a power of attorney over her account, and assured her that Gregory had not been involved in depleting her account.

Mrs. Thropp was seven months pregnant at the time she discovered her husband's forgeries. She apparently accepted his explanation of the matter because she hoped to save their failing marriage. In 1975, however, she filed for divorce and raised the issue of the stolen securities. During discovery in the divorce proceedings, Mrs. Thropp first learned that Bache may have mishandled her account when she took Gregory's deposition. In December, 1975, she filed this suit against Bache.

### I. Standard of Care

Under Ohio law, a stockbroker is an agent or bailee. *Southern Ohio Bank v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir. 1973). Both parties here have agreed that Bache was a fiduciary concerning matters within the scope of its agency relationship with Mrs. Thropp. As a fiduciary, a broker stands in a special relationship to a client and owes him a duty to use reasonable care and to act in good faith. *Garl v. Nihuta*, 50 Ohio.App.2d 142 (1975). *See also Henricksen v. Henricksen*, 640 F.2d 880 (7th Cir. 1981). Similarly, an agent is subject to a duty not to act in his

principal's affairs "except in accordance with the principal's manifestation of assent." *Falls Lumber Co. v. Heman*, 114 Ohio.App. 262, 181 N.E.2d 713 (1961), *quoting* 2 Restatement (Second) of Agency § 383 (1957).

An agent's negligence may give rise to a breach of fiduciary duty. Inherent in every agency relationship is the agent's obligation to use the skills and diligence necessary to protect the client's interest. The District Court recognized Bache's duty to exercise due care, noting that "every agent must possess a competent degree of skill to enable him to perform the duties he assumes, and if he undertakes such duties without the requisite skill, or is guilty of negligence whereby money of his principal is lost, he is liable in damages," *quoting* 3 Ohio Jur.3d *Agency* § 104 at 161–162.

▮ We reject Bache's argument that the District Court erred as a matter of law in concluding that Bache was negligent in handling Mrs. Thropp's security account. Bache challenges the District Court's reliance on Bache's internal rules, codified in its Standard Practice Instruction manual, ("SPI") as evidence of the proper standard of care. Bache also suggests that Mrs. Thropp failed to prove that Bache deviated from any minimum standard of conduct.

▮ This argument fails for two reasons. First, although evidence of custom or professional practice does not automatically establish a standard of care, a court may consider such evidence in determining the proper standard. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973); *Thompson v. Ohio Fuel Gas Co.*, 9 Ohio St.2d 116, 224 N.E.2d 131 (1967). These cases state the Ohio rule that *conformity* to custom is not conclusive on the question of negligence. The instant case involves evidence of *violations* of custom and *internal* rules. When a defendant has disregarded rules that it has established to govern the conduct of its own employees, evidence of those rules may be used against the defendant to establish the correct standard of care. The content of such rules may also indicate knowledge of the risks involved and the precautions that may be necessary to prevent the risks. *Montgomery v. Balt. & Ohio R.R.*, 22 F.2d 359 (6th Cir. 1927). *See also* Prosser, The Law of Torts § 33 (4th ed. 1971). The District Court correctly measured Bache's conduct by the standard of prudence it has established for its own employees. *See Henricksen v. Henricksen, supra.*

Second, ample evidence shows that Gregory fell below the standard of conduct that Bache requires of its brokers. Gregory testified that he did not even know all the requirements of Bache's rules governing powers of attorney, and admitted that he may have been "remiss" in his failure to ensure that a form was filled out properly for Mrs. Thropp's account. Mr. Gibson, an assistant manager at Bache, testified that internal supervisory procedures require an account executive to fill out a "New Account Information Sheet" and a Customer Account Card for anyone who holds a power of attorney over a client's account. Bache could not produce either of these documents for Jack Thropp's power of attorney. Mr. Gibson also testified that a Bache broker would not be authorized to take directions to trade in an account from one who claimed to hold a power of attorney on the strength of the document forged by Thropp.

This evidence persuades us that Bache was not diligent in enforcing its own rules. A reasonably diligent broker would have ascertained the permissible extent of a husband's involvement in an account held solely by his wife, and would not have followed orders to liquidate assets on the authority of an incomplete, forged power of attorney. As Mrs. Thropp's fiduciary, Bache was obligated to scrutinize closely all transactions ordered in her account. *See Henricksen v. Henricksen, supra.* The fact that Bache may have sent monthly statements to Mrs. Thropp reflecting the challenged transactions is irrelevant, despite Bache's insistence that it had no further obligation to Mrs. Thropp. The challenged transactions themselves were unauthorized, and Bache was negligent in facilitating them without

a clear manifestation of Mrs. Thropp's consent.

## II. Proximate Cause

We agree with the District Court that Bache's negligent management of Mrs. Thropp's account proximately caused her loss. The District Court held that:

> While the defendant has argued that the criminal conduct of Thropp was an unforeseeable intervening cause of the plaintiff's loss, it is clear that, but for the defendant's negligence, Thropp would have been unable to effect his theft. The negligence of the defendant in this case was a *substantial contributing legal cause* of the plaintiff's loss. The plaintiff therefore proved her right to recover the amount of the checks negligently issued and negligently turned over to Jack Thropp. (emphasis added).

Bache argues that Thropp's forgery was an intervening criminal act that Bache could not have foreseen as a probable consequence of its negligence. We do not agree, nor do we accept Bache's theory that Thropp's theft was unforeseeable because of Gregory's close friendship with the Thropps. This theory begs the essential question whether Bache owed Mrs. Thropp a duty to protect her assets from unauthorized manipulation. We find no legal basis on which to conclude that either Bache's rules or a fiduciary's duty should be relaxed when brokers deal with their friends. *See Henricksen v. Henricksen, supra.*

As a first step in our proximate cause analysis, we must determine whether Bache's negligence was an actual cause or a "cause in fact" of Mrs. Thropp's loss. Overwhelming evidence in the record supports the finding that Gregory's negligence in fact caused Mrs. Thropp's loss.

█ Next, we reject Bache's contention that Thropp's forgeries were an efficient intervening cause of the loss sufficient to relieve Bache from liability. Under Ohio law, an intervening cause that will break the chain of causation must be one "not brought into operation by the original wrongful act, but (it must operate) entirely independent(ly) thereof; it must be such a cause as would have produced the result, without the co-operation of the original wrong." *Freeman v. United States,* 509 F.2d 626, 633 (6th Cir. 1975) *quoting Dougherty v. Hall,* 70 Ohio App. 163, 172, 45 N.E.2d 608, 613 (1942). Bache's mismanagement made possible Thropp's subsequent wrongful act. The latter was entirely dependent on the former, and the two cooperated to produce Mrs. Thropp's loss. If Gregory had verified the validity of the power of attorney and ascertained that Mrs. Thropp had approved the challenged transactions, he could not have carried out Mr. Thropp's instructions to sell the stock for cash and to distribute the proceeds. Thropp's forgery, therefore, was not an efficient intervening cause. *See Neff Lumber Co. v. First National Bank,* 122 Ohio St. 302, 171 N.E. 327 (1930); *Mouse v. Central Savings & Trust Co.,* 120 Ohio St. 599, 167 N.E. 868 (1929).

The final step in our proximate cause analysis concerns the policy question whether the law will extend responsibility for Bache's negligent conduct to the consequences that Mrs. Thropp suffered. Prosser suggests the following framework, which we adopt:

> Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for what he has caused. Unlike the fact of causation, with which it is often hopelessly confused, this is essentially a problem of law. It is sometimes said to be a question of whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. Quite often this has been stated, and properly so, as an issue of whether the defendant is under any duty to the plaintiff, or whether his duty in-

cludes protection against such consequences. *This is not a question of causation, or even a question of fact, but quite far removed from both; and the attempt to deal with it in such terms has led and can lead only to utter confusion.* (emphasis added.) The Law of Torts at 244. (4th Ed., 1971).

We hold that Bache owed Mrs. Thropp a duty to protect the assets she had entrusted to its care from unauthorized transactions that could deplete her account. The District Court described Bache's duty in terms of Mrs. Thropp's "right to rely on Bache's not taking instructions from a third party in her account without a duly executed power of attorney on file." *See Gedeon v. East Ohio Gas Co.,* 128 Ohio St. 335, 190 N.E. 924 (1934). This duty flows from the fiduciary and contractual relationship shared by the parties. *See Henricksen v. Henricksen, supra.* The injury Mrs. Thropp suffered—the dissipation of capital assets entrusted to Bache—is precisely the sort of harm that proper supervision by Bache could and should have prevented. The ostensible purpose of Bache's supervisory rules is to prevent fraud and to protect its customers, as well as its employees. We conclude that Bache should have foreseen that mismanagement of this sort could lead to the loss Mrs. Thropp sustained. Thus, Bache's negligence was the legal cause of the injury and Bache is liable to Mrs. Thropp in damages.

### III. Ratification, Estoppel and Laches

■ Before turning to the affirmative defense of laches, we quickly dismiss the argument that Mrs. Thropp ratified the actions of Mr. Thropp and Bache. To establish ratification under Ohio law, one must show action by the principal, taken with full knowledge of the facts, which manifests his intention to adopt the unauthorized transaction. *Meyer v. Klensch,* 114 Ohio App. 4, 175 N.E.2d 870 (1961). *See also Shearson Hayden Stone, Inc. v. Leach,* 583 F.2d 367 (7th Cir. 1978).

■ We see no reason to disturb the finding that Mrs. Thropp did not learn of Gregory's involvement until 1975. Thus, it can-

not be said that she ratified Bache's actions. Nor can it be said that she ratified her husband's forgeries. The fact that she remained his wife is not the sort of "action" ratification requires.

■ Bache's argument that Mrs. Thropp's suit is barred by estoppel must also fail, due to her ignorance of essential facts. Furthermore, she never misled Gregory or caused Bache to change its position in reliance on her conduct. *Civilian Defense, Inc. v. Ross,* 152 N.E.2d 160 (Ohio C. of A., 1958). *See also TWM Mfg. Co. v. Dura Co.,* 592 F.2d 346 (6th Cir. 1979); *First Reg. Baptist Church v. Insurance Co. of North America,* 444 F.2d 279 (6th Cir.), *cert. denied,* 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971).

■ We now turn to the issue of laches. Laches is an equitable doctrine which has been described as a quasi-statute of limitations. Its essence is unreasonable delay in asserting a claim that prejudices the defendant. Laches is unavailable to Bache for two reasons. First, Mrs. Thropp seeks the legal remedy of damages. She charges Bache with breach of fiduciary duty, a cause of action *ex delicto* which is governed by the statute of limitations. Ohio Rev. Code § 2305.09. *See also Hart v. Guardian Trust Co.,* 52 O.L.A. 225, 75 N.E.2d 570 (1945). The other two counts, breach of contract and conversion, present legal claims as well, and are controlled by the applicable statutes of limitation. Ohio Rev. Code §§ 2305.07, .09.

Second, assuming laches is an available defense to an action at law, Bache has not established a proper case for laches on these facts. In order to prevail, Bache must prove: 1) that Mrs. Thropp had prior knowledge of the act complained of; 2) that she did not assert her legal claim diligently; and 3) that Bache suffered prejudice as a result. *Assoc. of Data Proc. Serv. Org., Inc. v. Fed. Home Loan Bank Bd. of Cincinnati,* 568 F.2d 478 (6th Cir. 1976). *See also Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *United States v. Weintraub,* 613 F.2d 612 (6th Cir. 1979).

A determination of laches is normally left to the discretion of the trial court. *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *Assoc. of Data Proc. Serv. Org., Inc. v. Fed. Home Loan Bank Bd., supra.* It is clear that the District Court did not abuse its discretion in resolving the question of laches in Mrs. Thropp's favor.

Bache claims, however, that Mrs. Thropp was remiss in failing to discover Gregory's negligence until she deposed him several years after the challenged transactions. Bache also insists that its monthly statements put her on notice that something was amiss. Although there was conflicting testimony on this issue, the District Court found that she did not receive them because Mr. Thropp concealed the statements from her. Furthermore, in light of evidence that these statements would not necessarily indicate the total value of her holdings, we cannot say that this finding is "clearly erroneous."

The District Court found that Mrs. Thropp questioned Gregory about her account on several occasions. He always avoided any specific discussion, spoke in vague terms of general market conditions, pleaded ignorance when confronted with Mrs. Thropp's suspicions, and told her to "talk to" her husband. Thropp, in turn, protected Gregory. The record clearly shows that Gregory helped to perpetuate Mrs. Thropp's ignorance. Bache cannot claim that her delay was "unreasonable" in light of its own evasion. *See United States v. Weintraub, supra.*

Finally, Bache asserts that it has been prejudiced because it had a right under Ohio law to require its bank to recredit to its account the amounts paid out over Thropp's forged endorsements. Ohio Rev. Code Ann. § 1304.29 Baldwin). Bache has irretrieveably lost this recourse, since such a claim is barred after three years. Ohio Rev. Code § 1304.24(D).

This argument overlooks the fact that, as a condition precedent to its recourse against the bank, Section 1304.24(D) imposes on Bache a duty to discover and report to the bank within one year any unauthorized alteration of the instrument. Although we do not decide the merits of Bache's putative claim, we do hold that Bache had notice of the forgeries at the time that Mrs. Thropp called Gregory and that he told her to "talk to her husband." Since Bache is chargeable with knowledge that Thropp's withdrawals were unauthorized as early as December, 1972, it cannot claim prejudice from a timely suit filed within three years of this date. Any prejudice Bache has suffered must be attributed to its own failure to investigate the matter.

We also affirm the District Court's award of prejudgment interest from the date of each check. Such an award is proper under Ohio law. Ohio Rev. Code § 1343.03.

Accordingly, the judgment of the District Court is affirmed in all respects. Costs on appeal are taxable to appellant.