989 F.2d 498
 RICO Bus.Disp.Guide 8262
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CHRISTIAN MEMORIAL CULTURAL CENTER, INC., Plaintiff-Appellant,
v.
ALAN B. LANCZ & ASSOC., INC., and Kidder, Peabody & Company,
Inc., Defendants-Appellees.
 No. 92-1222.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1993.
 
 Before NELSON and BOGGS, Circuit Judges.[1]
 PER CURIAM.
 
 
 1
 Christian Memorial Cultural Center, Inc. ("CMCC") appeals from a district's court order granting summary judgment for the defendants. CMCC contends that issues of material fact exist as to the duties of the defendant brokers, which preclude summary judgment, and that its complaint was timely. We disagree and affirm the judgment of the district court.
 
 
 2
 * CMCC operates a cemetery in Rochester Hills, Michigan. Michigan law requires CMCC to maintain a trust account for the perpetual care of the cemetery. According to plaintiff's complaint, the law mandates that the account invest only in stocks traded on the New York Stock Exchange ("NYSE") or the American Stock Exchange ("AMEX"). CMCC instigated this action after sustaining losses in five such accounts managed by defendant Alan B. Lancz and Associates ("Lancz"). Defendant Kidder Peabody ("Kidder") was responsible for executing trades at the direction of Lancz. Kidder had no discretion in executing these trades.
 
 
 3
 On June 20, 1989, Alan Lancz, President of Lancz & Associates, met with Bernard LePage, the director of CMCC. At the meeting, the two men discussed the possibility of Lancz's handling CMCC's portfolio. LePage specified that his investment objective was "growth." Lancz provided two of his recent newsletters, which detailed his successes in over-the-counter ("OTC") stocks. Specifically, Lancz pointed out his success in investing in the Rexhall Corporation, a stock traded OTC. In July 1989, CMCC transferred the management of its portfolio to Lancz. At that time, CMCC's account contained 21,050 shares of Prepaid Legal Services, Inc, a company not traded on the NYSE or AMEX. Lancz then purchased stock in Rexhall and another OTC company called ADAC. CMCC received confirmation of these transactions in August 1989. On at least four occasions in 1989, Lancz and a representative of CMCC met to review the portfolio. At these meetings, Lancz systematically analyzed each of CMCC's investments. Most of the investments were in companies not traded on the NYSE or AMEX.
 
 
 4
 Soon thereafter, the account began to sustain losses. About that time, CMCC learned for the first time that Michigan law requires that a company operating a cemetery may invest only in companies traded on the NYSE or AMEX. This information was contained in CMCC's trust document. However, no one at CMCC ever read the document and defendants never received it.[2] Because Lancz invested in numerous companies that were not traded on the permissible exchanges, CMCC brought suit alleging that Lancz and Kidder violated their fiduciary duty. CMCC claims that the defendants failed to investigate and to discover the legal limitations placed upon plaintiff's investments. Plaintiff alleges causes of action based upon federal securities laws, RICO, and state law.
 
 
 5
 The district court granted summary judgment for the defendants on all claims. The court ruled that plaintiff failed to raise a factual issue as to whether defendants breached a fiduciary duty. The court also ruled that the statute of limitations barred the action. The court further granted summary judgment on plaintiff's RICO cause of action. Plaintiff then brought this timely appeal.
 
 II
 
 6
 CMCC admits that it did not file any supporting affidavits in opposition to the defendants' motions for summary judgment. Instead, the plaintiff chose to rely upon the pleadings. In the pleadings, both defendants stated that they were unaware of any requirement that limited stock investments to the NYSE and AMEX. The district court held that plaintiff's failure to file opposing affidavits presented an adequate basis for granting summary judgment.
 
 
 7
 Fed.R.Civ.P. 56(e) states, in pertinent part, that:
 
 
 8
 "... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."
 
 
 9
 A party unable to obtain affidavits to oppose summary judgment may then file affidavits detailing why affidavits were unavailable. Fed.R.Civ.P. 56(f). In this case, plaintiff admittedly could have obtained affidavits. The failure to do so violates the rule, and the district court acted within its discretion when it granted summary judgment. However, as the district court noted, and as discussed below, there are also more substantive reasons for granting summary judgment in this case.
 
 III
 
 10
 Lancz met with LePage and his son to discuss various investments. Ironically, LePage's son is a former stockbroker. LePage explicitly told Lancz that CMCC was looking for "high growth" stocks. LePage said his only concern was that he wanted to avoid "sin stocks."[3] Lancz stated that he would invest CMCC's money in growth stocks, and he named some of his likely investments. None of these companies were traded on the NYSE or AMEX. Lancz later wrote to LePage and confirmed the conversation, and stated that "if for any reason you decide to alter or add ... restrictions, please let me know." When Lancz assumed responsibility for CMCC's portfolio, it contained stocks not traded on the NYSE or AMEX. Lancz met with CMCC representatives frequently and informed them of his investments. Most of the investments involved companies not traded on the NYSE or AMEX. LePage admits that he never informed defendants of any restrictions. Indeed, LePage concedes that he was unaware of any restriction contained in the Trust Agreement.
 
 
 11
 A broker has a duty to use reasonable care and to act in good faith when making investment decisions. Thropp v. Bache Halsey Stuart Shields, Inc., 650 F.2d 817 (6th Cir.1981); LeBoce S.A. v. Merrill, Lynch, Pierce, Fenner, and Smith, 709 F.2d 605 (9th Cir.1984). These cases, and sundry others, require a broker to obey a client's orders, and to make prudent investment decisions. Plaintiff cannot muster any authority that supports the theory that defendants violated any duty in this case. Plaintiff's theory of the case would extend the liability of brokers to any act, however unwitting or authorized by the customer, that in fact violates any duty of the customer. This court is unwilling to extend fiduciary laws to this extent.
 
 
 12
 For additional reasons, appellant cannot state a case against Kidder. Kidder exercised no control over CMCC's account. A nondiscretionary broker only owes a duty to execute transactions properly. Congregation of the Passion, Holy Cross Province v. Kidder, Peabody and Co., Inc., 800 F.2d 177 (7th Cir.1986); Leib v. Merrill, Lynch, Pierce, Fenner, and Smith, Inc., 461 F.Supp. 951 (E.D.Mich.1978). Appellant makes no allegations that Kidder violated this limited duty. Accordingly, summary judgment is proper.
 
 
 13
 Moreover, appellant's claim is proscribed by the statute of limitations. The complaint reads:
 
 
 14
 Plaintiffs first became aware of defendants [sic] violation of the trust agreement on or about August 29, 1989 and September 15, 1989...."
 
 
 15
 The district court dismissed the § 10(b) claim, 15 U.S.C. § 78j(b), relying on Lampf, Pleva, Lipkind, Prupis and Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773 (1991). Lampf holds that plaintiffs must bring suit within one year of discovery and three years of the underlying wrong. Because appellant concedes knowledge on August 29, 1989, and did not sue until September 10, 1991, the appellant exceeded the period of one year from discovery. Section 12(2) of the Securities Act also requires that a party bring suit within one year from discovery. 15 U.S.C. § 77(m). Accordingly, appellant's federal claims are time-barred.
 
 
 16
 Appellant's claims under the Michigan Uniform Securities Act are also time-barred. Michigan law mandates that suits be brought within two years from when the plaintiff knew or should have known the alleged untruths or omissions. Mich.Comp.Laws § 451.801-10 (1989). In this case, appellant concedes that it knew of defendants' violation in August 1989, but that it did not bring suit until September 1991. Therefore, the Michigan state law claims are time-barred.
 
 IV
 
 17
 Appellant asserted a RICO cause of action under 18 U.S.C. § 1962(c). Following dismissal of CMCC's securities claims, the district court entered judgment for the defendants on the RICO cause of action. This decision was proper. Absent viable securities law claims, CMCC cannot establish the requisite predicate acts necessary to demonstrate a pattern of racketeering activity. See, e.g., Harris Trust and Savings Bank v. Ellis, 609 F.Supp. 1118 (N.D.Ill.1985) (dismissed securities fraud claims cannot support RICO allegation). Moreover, CMCC failed to plead the RICO predicate acts with the required particularity. Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485 (6th Cir.1990). Accordingly, we dismiss the RICO cause of action.
 
 V
 
 18
 Appellees request fees and expenses for having to defend against this action. "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Fed.R.App. 38. This court has awarded fees where the appeal is patently frivolous. Dallo v. Immigration and Naturalization Service, 765 F.2d 581 (6th Cir.1985). Plaintiff's appeal, though weak, is not frivolous and we do not believe that costs are warranted in this case.
 
 
 19
 For the reasons stated, we AFFIRM the district court's summary judgment in favor of the defendants.
 
 
 
 [1]
 Immediately prior to oral argument, one of the parties disclosed an affiliation that necessitated the recusal of one member of the original panel
 
 
 [2]
 CMCC alleged in its complaint that it delivered trust documents to Lancz that discussed the limitation. However, no evidence exists that CMCC ever gave this information to Lancz and Lancz denies ever receiving it. CMCC has abandoned this argument on appeal
 
 
 [3]
 LePage meant tobacco, alcohol, and defense companies