[Cite as *In re Estate of Conner*, 2016-Ohio-8214.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ESTATE OF LARIE J. CONNER, | ) | |
| DECEASED | ) | CASE NO. 15 MO 0015 |
| | ) | |
| | ) | OPINION |
| | ) | |

CHARACTER OF PROCEEDINGS:     Appeal from the Court of Common Pleas, Probate Division, of Monroe County, Ohio
Case No. 2014 EST 09951

JUDGMENT:     Affirmed.

APPEARANCES:
For Appellant, Nancy Conner, Executor     Attorney John Estadt
46457 National Road West
St. Clairsville, Ohio 43950

For Appellee, Roger English     Attorney Christopher White
Attorney Thomas White
209 North Washington Street
Millersburg, Ohio 44654

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: December 15, 2016

DeGENARO, J.

{¶1} Appellant Nancy Conner, Executor of the Estate of Larie J. Conner, appeals the decision of the probate court ruling in favor of Appellee Roger "Pete" English on his exceptions to the Estate's inventory. The Executor asserts that the trial court erred by considering English's exceptions as they were untimely, and that the trial court's substantive decision on his exceptions regarding six specific items was erroneous based upon the doctrine of equitable estoppel. For the following reasons, the Executor's assignments of error are meritless and the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} Larie Conner died testate, and was survived by his wife Nancy and his two adult children, Shawn Conner and Candie Weber. The decedent's Will was admitted to probate and granted Nancy the right to reside on the decedent's home farm property for her lifetime or until she remarried or cohabited. The remainder interest in the home farm, along with farm equipment and guns, was devised to Shawn and Candie. The residual estate was devised to Nancy who also was appointed Executor.

{¶3} Appellee English and the decedent were friends and business partners, and jointly purchased a great deal of personal property during the decedent's lifetime. English asserted he was also sole owner of certain items that were stored on decedent's property.

{¶4} After the decedent died, English consulted an attorney about making a claim against the Estate. However, the list of items English provided to his former attorney did not effectively differentiate between the sole and jointly-owned property, and when counsel sent a letter to the Estate the list identified all the property therein as jointly owned with the Estate. Counsel for the Estate replied by letter three days later, stating, in pertinent part: "Thank you for your letter on behalf of Roger "Pete" English. We recognize his claim against the Estate."

{¶5} Eventually, English became aware that the Estate had inventoried all the items on the list provided to the Estate in English's initial claim as jointly owned

by the Estate and English. By this point, English had retained a different attorney and filed exceptions to the Estate's inventory. These exceptions were filed one day later than the timeline specified within R.C. 2115.16 and set for a hearing. After the hearing, the trial court sustained the exceptions and ordered that property owned solely by English be immediately returned to his possession.

**Untimeliness of Exceptions**

{¶6} In its first of two assignments of error, the Executor asserts:

The trial court erred in permitting Appellee Roger English to file exceptions to the inventory after the statutory deadline set forth in O.R.C. 2115.16.

{¶7} "Probate courts, like all trial courts, inherently possess discretion in managing their docket. *See generally, State ex rel. Charvat v. Frye*, 114 Ohio St.3d 76, 2007-Ohio-2882, 868 N.E.2d 270, at ¶ 23. Within that discretion is the power to dismiss [or conversely, entertain] untimely motions and filings." *In re Guardianship of Snyder*, 4th Dist. No. 09CA21, 2010-Ohio-3899, ¶ 27. Accordingly, we will apply an abuse of discretion standard of review.

{¶8} The timeframe for filing exceptions to the inventory is set forth as follows:

Upon the filing of the inventory required by section 2115.02 of the Revised Code, the probate court shall set a day, not later than one month after the day the inventory was filed, for a hearing on the inventory. * * * Exceptions to the inventory * * * may be filed at any time prior to five days before the date set for the hearing or the date to which the hearing has been continued by any person interested in the estate or in any of the property included in the inventory, but the time limit for the filing of exceptions shall not apply in case of fraud or concealment of assets. When exceptions are filed, notice of them and the time of the

hearing on them shall be given to the executor or administrator and the attorney of the executor or administrator by certified mail or by personal service, unless the notice is waived.

R.C. 2115.16.

{¶9} The Executor asserts the Estate was prejudiced by the late filing, but fails to explain how. Thus the trial court correctly concluded there was no prejudice and that the deviation from the statutory deadline was de minimus.

{¶10} Moreover, the filing of exceptions was not necessarily required because the Estate was already on notice that English had some type of ownership interest in the property and therefore the probate court was obligated to determine the nature and extent of English's interest, regardless of whether exceptions were filed. *See generally* R.C. 2117.06 (discussing procedure for claims against the estate.) The probate court recognized this statutory obligation in a journal entry stating: "This Court finds that the Executor herein acknowledged that English has some property interest in the items listed in English's Exhibit A. Accordingly, this Court has the responsibility to determine the nature and extent of English's property interest in various items of property possessed by the Estate."

{¶11} Finally, R.C. 2115.16 provides the time limit shall not apply in case of fraud or concealment. There was some evidence of concealment of assets by the Executor. Shawn Conner testified that various pieces of property were marked with ribbons to identify whether it belonged to Conn Oil, the decedent's company, or to English. Shawn further testified that the evening after they put those ribbons on, "Mrs. Conner [the Executor] and some of her associates [came] and took the ribbons off on the items * * *. They were witnessed doing that." Shawn confirmed that some of the ribbons were removed from items that he identified as English's property, including the track hoe loader, the Mack truck and the Lo-boy.

{¶12} Accordingly, the Executor's first assignment of error is meritless.

**Equitable Estoppel**

**{¶13}** In its second and final assignment of error, the Executor asserts:

The trial court erred in determining the 1929 Ford Model A, the 1996 Chevrolet truck, the cargo trailer, the Mack semi-tractor, the 40-ton lo-boy trailer, and the track loader are the sole property of Appellee Roger English.

**{¶14}** The gist of the Executor's second assignment of error is that because English's former attorney mailed a letter to the Estate that identified the six disputed items as jointly owned by English and the decedent—instead of English's sole property—English is estopped from raising an exception to the Estate's inventory.

**{¶15}** "Equitable estoppel precludes a party from asserting certain facts when the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct." *Merriner v. Goddard*, 7th Dist. No. 08-MO-2, 2009-Ohio-3253, ¶ 86. However, "[n]o estoppel arises where the representation or conduct of the party to be estopped is due to ignorance founded upon an innocent mistake." *El-Tatawy v. Leader Nat. Ins. Co.*, 6th Dist. No. L-96-281, 1997 WL 543058, *3 (Aug. 29, 1997), citing *Fleming v. City of Steubenville*, 44 Ohio App. 121, 125-126, 184 N.E. 701 (7th Dist.1931). *Accord* 42 Ohio Jurisprudence 3d, Estoppel and Waiver, Section 36 (2016).

**{¶16}** Although English did not explain why his prior attorney's letter to the Estate was incorrect, it appears it was merely an innocent mistake or miscommunication. English testified during the hearing that the property listed in his exceptions to the inventory, specifically, the 1929 Ford Model A, the 1996 Chevrolet truck, the cargo trailer, the Mack semi-tractor, the 40-ton lo-boy trailer, and the track loader belonged to him alone; that they were not jointly owned by him and the decedent. These six items are the sole focus of the Executor's appeal.

**{¶17}** In addition, English presented handwritten receipts demonstrating he purchased, from James Young, the 1929 Ford Model A for $1,000.00; the 1996 Chevrolet truck for $2,000.00; and the cargo trailer for $300.00. English produced the

registration for the cargo trailer, which was in his name. He produced the titles for the Ford Model A and the Chevrolet truck; they were signed by James Young and notarized, though English never filled out the transferee information.

**{¶18}** English did not have any documentation for the Mack semi-trailer, the lo-boy trailer, or the track loader. However, English testified he purchased the semi-trailer and lo-boy trailer for approximately $5,550.00 and the track loader for $500.00. In addition, the decedent's son Shawn confirmed his understanding that those three items belonged to English alone.

**{¶19}** The Executor failed to present any specific evidence to contradict the evidence presented by English. Instead she only presented her own generalized testimony that the decedent and English would often jointly buy property together; and that "whoever had the money at the time was the one that paid, and then they would get together and they would get it all settle so that each one had paid half of everything." She further stated that the decedent was "always really proud" to acquire property at bargain prices and said that the decedent would often ask her to "go out to Pete's [English's] house to see what him [sic] and Pete had bought, because he was so proud of it." To that end, she said the decedent once showed her a "cargo holder," "a beautiful old car" and a "1996 truck" that the decedent and English "had bought together." However, the Executor conceded she had no documentation to contradict the receipts and registration information that English presented to demonstrate his ownership of those three items or to prove that the decedent had a joint property interest in those items. Further, the Executor later conceded that she and the decedent had relationship problems, to the point where they lived separately from one another for the last five to six years of their marriage. Of note, Shawn testified that the Executor and decedent had limited interaction during their separation.

**{¶20}** The trial court was in the best position to determine matters of credibility. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273, (1984). English provided specific evidence in the form of testimony and exhibits

for the probate court's consideration relative to the six items which are the subject of this appeal. In contrast, the Executor offered no specific evidence in rebuttal; instead she offered testimony of her understanding of how decedent and English generally conducted purchases, along with generalized descriptions of three items she believed the decedent and English had purchased together. However, the Executor had no documentation to support her general claims. Accordingly, the record supports the probate court's finding that English's evidence regarding ownership of these six items was uncontroverted. Moreover, there was testimony which apparently had a negative impact on the probate court's assessment of the Executor's credibility. Thus, the trial court reasonably determined that English was the sole owner of the six disputed items.

{¶21} Accordingly, the Executor's second assignment of error is also meritless and the judgment of the trial court is affirmed.

Waite, J., concurs.

Robb, J., concurs.