**Wendell E. ATER II, a Minor By and Through his Mother and Next Friend Cheryl ATER, et al., Plaintiffs,**

v.

**Phyllis FOLLROD, et al., Defendants.**

No. C2–00–934.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 17, 2002.

Harold Lee Thompson, H. Lee Thompson & Associates, Columbus, OH, Leslie Frank Weisbrod, David Robert Norton, Leanna Marchand, Dallas, TX, William A. Newman, Dallas, TX, Robert Joseph Byrne, Ohio Attorney General, Columbus, OH, for Plaintiffs.

Warren Michael Enders, Amy M. Fulmer-Stevenson, Reminger & Reminger, Co., L.P.A., Columbus, OH, William R. Thomas, William R. Thomas Co. LPA, Delaware, OH, for Defendants.

## MEMORANDUM & ORDER

HOLSCHUH, District Judge.

Plaintiff Wendell E. Ater II ("Wendell II"), and his parents, Cheryl and Wendell Ater, Jr., brought this medical malpractice action against Madison County Hospital and several of its employees ("Madison County Hospital defendants"), Dr. Hong Kim, Cheryl Ater's obstetrician, and Dr. Sooja Kim, Wendell II's pediatrician ("defendant doctors"), seeking to recover damages for injuries sustained by Wendell II in connection with his birth. Jurisdiction is based on diversity of citizenship. This matter is currently before the Court on several motions, all concerning the issue of whether Plaintiffs' claims are barred by the "double dismissal" rule and the doctrine of *res judicata:* (1) Madison County Hospital defendants' motion for summary judgment (Record at 40); (2, 3) Plaintiffs' motions for summary judgment on the *res judicata* defenses raised by defendant doctors and by the Madison County Hospital defendants (Record at 42 and 43); and (4) Defendant doctors' cross motion for summary judgment on the *res judicata* defense (Record at 49).

## I. Factual Background and Procedural History

On August 30, 1995, Cheryl Ater, approximately thirty-two weeks pregnant with her third child, arrived at Madison County Hospital, reporting that her baby had not moved for two days. Her obstetrician, Dr. Hong Kim, conducted fetal heart monitoring and sent her home with instructions to return the following day. She returned to the hospital on August 31,

1995 and was admitted. On September 1, 1995, she gave birth to a baby boy, Wendell II, by Cesarean section. When Wendell II was born, he had difficulty breathing and suffered from severe hypoxia. His pediatrician, Dr. Sooja Kim, eventually transferred him to Children's Hospital in Columbus.

Plaintiffs allege that Wendell II suffered from persistent fetal distress in the seventy-two hours prior to his birth and that, as a result of Defendants' negligence in managing Cheryl Ater's labor and delivery, Wendell II suffers from permanent brain damage and cerebral palsy. Plaintiffs have filed a total of four lawsuits seeking damages from the health care professionals who provided medical care during Mrs. Ater's pregnancy, labor, and delivery. The Court will label these, in chronological order, Ater I, Ater II, Ater III, and Ater IV.

### A. Ater I

On January 24, 1997, Wendell II, a minor, by and through his mother and next friend, Cheryl Ater, along with his parents, Wendell Ater, Jr. ("Wendell, Jr.") and Cheryl Ater, filed a medical malpractice suit in the Madison County Court of Common Pleas, Case No. 97CV–01–038 (hereafter "Ater I"). They named as defendants Madison OB–GYN, Inc., Hong Kim M.D., Sooja Kim, M.D., Madison County Hospital, Inc., Mark Garwood, D.O., Madison United Lab, Inc., J.C. Starr, M.D., and other John and Jane Does who allegedly provided negligent medical care to Cheryl Ater and Wendell II.

In Ater I, Wendell II alleged that Defendants fell below the standard of care by negligently: (1) conducting a pregnancy screening test on his mother, Cheryl Ater, and/or failing to properly interpret the pregnancy screening test; (2) administering Depo–Provera to Cheryl Ater when she was pregnant; (3) failing to properly

follow-up and monitor the course of her pregnancy after it was discovered that she had received Depo–Provera while pregnant; and (4) failing to obtain Mrs. Ater's informed consent prior to administering Depo–Provera. Mr. and Mrs. Ater brought separate claims, seeking to recover for loss of services and companionship, severe emotional distress, and medical bills. (Ex. A to Madison County Hospital Defs.' Mot.Summ.J.).

On July 15, 1999, Plaintiffs sought leave to amend their complaint. Plaintiffs contended that, through discovery, they had been able to determine the identity of additional nurse defendants. They sought to add Madison Pediatric, Inc., Ohio Hospital Insurance Co., and Madison County Hospital nurses Phyllis Follrod, Michelle Bierbaugh, and Carol Hackley as defendants. The proposed amended complaint contained additional allegations of negligence on the part of the health care providers and sought punitive damages. It also sought a declaration of rights and benefits under the hospital's insurance policy. (Ex. C to Pls.' Resp. to Madison County Hospital Defs.' Mot.Summ.J.).

In response to the motion for leave to amend the complaint, Defendants argued that the declaratory judgment action concerning the insurance policy should be brought as a separate action. They also argued that it was too late for Plaintiffs to name nurses Follrod, Bierbaugh and Hackley as defendants because Ohio Rules of Civil Procedure 3 and 15 require that the complaint be amended within one year to substitute an individual for a "Jane Doe" defendant. Defendants also argued that to interject new parties into the litigation would cause substantial delay and duplication of effort. Finally, Defendants argued that there was no basis for punitive damages. (Exs. E & F to Pls.' Resp. to

Madison County Hospital Defs.' Mot. Summ.J.).

On August 20, 1999, the Madison County Court of Common Pleas, in a one page order, denied Plaintiffs' motion for leave to amend the complaint, finding that Plaintiffs had waited more than one year to substitute the nurse defendants for the Jane Doe defendants, and that the addition of such parties was therefore time-barred. The court also found that Plaintiffs' attempt to assert a claim for punitive damages six months after the case was assigned for trial was inappropriate. (Ex. D to Pls.' Resp. to Madison County Hospital Defs.' Mot.Summ.J.).

### B. Ater II

Because the court denied Plaintiffs' motion for leave to amend the complaint in Ater I, Plaintiffs filed a second suit in the Madison County Court of Common Pleas. On August 31, 1999, Wendell II, a minor, by and through his parents, filed suit against nurses Phyllis Follrod, Michelle Bierbaugh, and Carol Hackley, the Board of Directors of Madison County Hospital, Inc., and other Jane and John Does that provided negligent medical care to him (hereafter "Ater II"). On September 22, 1999, this complaint was amended to include Hong Kim, M.D., and Madison County Hospital, Inc. as additional named defendants.

In Ater II, Case No. 99CV08–149, Wendell II alleged that Defendants fell below an acceptable standard of care by negligently: (1) administering oxytocin to Cheryl Ater; (2) failing to properly and timely recognize the acute signs of fetal distress hypoxia and communicate those signs so that Cheryl Ater's high risk pregnancy could be properly managed; and (3) failing to correctly interpret, document and communicate electronic fetal heart rate patterns, including failing to recognize ominous late decelerations. He also claimed that the nurses negligently failed to notify nursing medical management staff of non-reassuring fetal heart rate patterns, and that the hospital's supervisory personnel failed to adequately train and supervise the hospital nurses. In addition, Wendell II alleged that certain hospital personnel negligently interfered with, altered, or destroyed medical records, and that the hospital did not meet the minimum standards of care as set forth in Ohio Revised Code Chapter 3701. He also alleged that Defendants did not obtain Mrs. Ater's informed consent during the course of her medical treatment from August 30, 1995 through September 1, 1995 and fell below the standard of care required in the field of obstetrics and gynecology. (Ex. B to Madison County Hospital Defs.' Mot.Summ.J.).

### C. Ater III

On August 31, 1999, Wendell Ater II, a minor, by and through his parents, along with Cheryl Ater and Wendell, Jr., also filed a declaratory judgment action in the Franklin County Court of Common Pleas, Case No. 99CVA08–7196 (hereafter "Ater III"). In connection with Ater I, Plaintiffs sought a declaration of rights and benefits under the insurance policy purchased by Madison County Hospital. (Ex. D to Madison County Hospital Defs.' Mot.Summ.J.). Named defendants included Ohio Hospital Insurance Co., Madison County Hospital, Inc., the Madison County Hospital Board of Directors, Hong Kim, M.D., and Sooja Kim, M.D.

### D. Dismissal

On December 13, 1999, Plaintiffs filed notices of voluntary dismissal "without prejudice" in Ater I, Ater II, and Ater III. (Exs. F, G, H to Madison County Hospital Defs.' Mot.Summ.J.).

### E. Ater IV

On August 15, 2000, Wendell II, by and through his mother and next friend, Cheryl Ater, along with Cheryl Ater and Wendell, Jr., filed the suit currently pending in this Court (hereafter "Ater IV"). They named as defendants Phyllis Follrod, Michelle Bierbaugh, Carol Hackley, LouAnne Adkins,[1] Madison County Hospital, Inc. and its Board of Directors, and various hospital officials including: Gary Lehman, President; Michael Turner, Chief of Staff; Judy Pritt, Vice President of Patient Care; Judy Adams, Director of Nursing; and Bob Kirby, Director of Operations. Plaintiffs also again named Hong Kim, M.D. and Sooja Kim, M.D.

■ In the complaint, Plaintiffs noted that, pursuant to Ohio Revised Code § 2305.19, they had one year to refile the suits previously dismissed and that the statute of limitations was tolled during that period as to all defendants previously timely sued. Therefore, as to all defendants previously sued in a timely manner, Mr. and Mrs. Ater were able to bring suit in both their individual and representative capacities. However, since Mr. and Mrs. Ater had failed to timely file suit against the Madison County Hospital Board of Directors, Michael Turner, Judy Pritt, Judy Adams, and Bob Kirby, they could bring this action against those defendants only in their representative capacity, on behalf of Wendell II. Wendell II's medical malpractice claims were not time-barred because the statute of limitations for minors is tolled until they reach the age of majority. *See Mominee v. Scherbarth,* 28 Ohio St.3d 270, 503 N.E.2d 717 (Ohio 1986).

In a twelve count complaint, Plaintiffs alleged that the nurses were negligent for: (1) failing to properly and timely recognize acute signs of fetal distress and hypoxia; (2) failing to communicate these signs so that Cheryl Ater's high risk pregnancy could be properly managed; (3) failing to correctly interpret, document, and communicate electronic fetal heart rate patterns; (4) failing to notify nursing medical management staff of the nonreassuring fetal pattern; (5) failing to transfer Cheryl Ater to a level 3 hospital for management of her labor; and (6) failing to invoke and follow chain of command rules to obtain prompt medical care for her. (Counts I–IV).

Plaintiffs further alleged that the hospital, its Board of Directors, and Lehman, Turner, Pritt, Adams, and Kirby were negligent for: (1) failing to have a properly trained medical staff to diagnose, evaluate, and treat Cheryl and Wendell II; (2) failing to have appropriate policies and procedures in place and to follow them regarding evaluation, assessment, diagnosis, treatment, nursing intervention, and chain of command; (3) wrongfully allowing Dr. Hong Kim premature delivery privileges and delivery privileges; (4) wrongfully allowing Dr. Sooja Kim privileges to resuscitate newborns or premature newborns; and (5) failing to have or enforce a transfer policy for premature newborns and complex obstetrical care. In addition, Plaintiffs alleged that the hospital and its Board of Directors were vicariously liable for the negligence of its nurses, and were negligent *per se* for violating Ohio Revised Code Chapter 3701 and its accompanying regulations. (Counts V–X).

As to Dr. Hong Kim, Plaintiffs alleged that he: (1) failed to properly recognize acute signs of fetal distress and hypoxia; (2) failed to properly and timely manage Cheryl's high risk pregnancy by ordering additional tests and consults; (3) failed to correctly interpret fetal heart rate patterns; (3) failed to obtain an ultrasound or

---

**1.** Ms. Adkins was also employed as an RN at the Madison County Hospital. Although not originally named as a defendant in Ater II, it appears that she was later added.

refer Cheryl to a perinatologist on August 22, 1995 when he found that the fetus was small for gestational age and that Cheryl had allegedly suffered a trauma when she fell down the stairs; (4) failed to perform a timely Cesarean section; (5) failed to transfer her to a qualified hospital for management of premature labor; and (6) wrongfully undertook delivery of a premature infant in an ill-equipped hospital when he knew, or should have known, he was not competent to do so. (Count XI). As to Dr. Sooja Kim, Plaintiffs alleged that she was negligent in: (1) failing to transfer Wendell II to an appropriate hospital in a timely manner; (2) failing to timely and properly resuscitate him; and (3) failing to timely diagnose and treat his condition. (Count XII).

Plaintiffs also alleged that Defendants had wrongfully interfered with, altered, or destroyed medical records related to this case, and failed to warn, educate, and advise Cheryl of the risks and benefits necessary to make an informed decision concerning her condition. Plaintiffs claimed that Defendants acted with actual malice, and that Plaintiffs were harmed as a proximate result of Defendants' negligence. Mr. and Mrs. Ater also asserted claims for loss of services and companionship, and for medical expenses.

The parties have now filed several cross motions for summary judgment. The sole issue in each motion is whether Plaintiffs' voluntary dismissal of Ater I, Ater II, and Ater III operates under the "double dismissal" rule set forth in Ohio Rule of Civil Procedure 41(A) and the doctrine of *res judicata* to bar Plaintiffs from pursuing their medical malpractice claims in this Court.

## II. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56(c) provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the stan-

dard for what was formerly referred to as a directed verdict. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

> "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio*

*Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157–60, 90 S.Ct. 1598.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

### III. Discussion

#### A. *Res Judicata* and the Double Dismissal Rule

As noted earlier, on December 13, 1999, Plaintiffs voluntarily dismissed without prejudice each of the three suits then pending in state court. In their motions for summary judgment, Defendants claim that these voluntary dismissals, through the application of the "double dismissal"

rule set forth in Ohio Rule of Civil Procedure 41(A)(1), triggered the doctrine of *res judicata* to bar Plaintiffs from pursuing this action. Plaintiffs vehemently disagree, and have filed cross motions for summary judgment concerning the applicability of this defense.

■■■ The doctrine of *res judicata* or "claim preclusion" prevents parties or their privies from relitigating claims that were actually litigated, or could have been litigated, in a previous action. *See Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (Ohio 1995).[2] In Ohio, a party seeking to invoke the doctrine of *res judicata* must prove four elements:

(1) a prior final, valid decision on the merits by a court of competent jurisdiction;

(2) a second action involving the same parties or their privies, as the first;

(3) a second action raising claims that were or could have been litigated in the first action; and

(4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*In re Fordu*, 201 F.3d 693, 703–04 (6th Cir.1999) (construing Ohio law).

The first element of *res judicata* requires a prior, valid decision on the merits. It is undisputed that each of the three lawsuits filed in state court was voluntarily dismissed by Plaintiffs prior to a final, valid decision on the merits by a court of competent jurisdiction. Nevertheless, Ohio Rule of Civil Procedure 41(A)(1), governing voluntary dismissals of suits by plaintiffs, offers another possibility for satisfying the first element of a *res judicata* defense. That rule permits a plaintiff to dismiss a case either by "filing a notice of dismissal" or by "filing a stipulation of dismissal signed by all parties who have appeared in the action." Ohio R.Civ.P. 41(A)(1). The rule further states, in pertinent part, "[u]nless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, *except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed, in any court, an action based on or including the same claim.*" *Id.* (emphasis added).[3] This is known as the "double dismissal" rule.

The principal issue in this case is whether Plaintiffs' simultaneous voluntary dismissals of Ater I and Ater II triggered the double dismissal rule, thereby satisfying the first element of the *res judicata* defense. According to Defendants, once Plaintiffs dismissed Ater I, the "notice of dismissal" of Ater II triggered the double dismissal rule because Ater II involved the "same claim" asserted in Ater I. Therefore, even though Plaintiffs attempted to voluntarily dismiss Ater II "without prejudice," Defendants claim that this language was ineffective; as a matter of law, the notice of dismissal operated instead as an adjudication on the merits, acting to bar

---

2. Pursuant to the Full Faith and Credit statute, a federal court must give a state court judgment the same preclusive effect that the judgment would have in state court, and must apply the law of the state where that judgment was rendered to determine its preclusive effect in the federal action. *See* 28 U.S.C. § 1738; *In re Fordu*, 201 F.3d 693, 703 (6th Cir.1999). Because Ater I, Ater II, and Ater III were filed in Ohio state courts, this Court must apply the preclusion principles of Ohio law.

3. On July 1, 2001, this rule was amended to read: "... except that a notice of dismissal operates as an adjudication on the merits of any claim that the plaintiff has once dismissed in any court." In the Court's view, for purposes of the pending motions, this amendment is of little consequence because the amended language still implies that the two claims must be the "same" in order for the double dismissal rule to apply.

future actions under the doctrine of *res judicata.* *See Dyson v. Adrenaline Dreams Adventures,* 143 Ohio App.3d 69, 71 n. 1, 757 N.E.2d 401, 402–03 (Ohio Ct.App.2001). Plaintiffs, however, contend that because Ater I and Ater II did not involve the "same claim," this rule was not triggered and the claims asserted in Ater IV are therefore not barred by the doctrine of *res judicata.*

■■■ Before the Court discusses the merits of the parties' positions, it is appropriate to narrow the scope of the relevant inquiry. Although Defendants argue that application of the double dismissal rule would bar all of Plaintiffs' current claims, this is clearly incorrect. Implicit in the "same claim" language of the double dis-

missal rule is a requirement that the parties in the original action be the same, or in privity with, the parties in the second action. *See Rees v. Heimberger,* 60 Ohio App.3d 45, 46, 573 N.E.2d 189, 191 (Ohio Ct.App.1989) ("[i]n order for a judgment to be *res judicata,* there must be an identity of parties and identity of issues"). In this case, only Wendell II was a plaintiff in both Ater I and Ater II.[4] Therefore, the double dismissal rule—if it applies at all—would bar only Wendell II's claims. As to the named defendants in this case, only Madison County Hospital and Dr. Hong Kim were named as defendants in both Ater I and Ater II.[5] Therefore, the Court finds that, if the double dismissal rule applies at all, it would bar only Wendell II's

4. The double dismissal rule cannot bar Mr. and Mrs. Ater's claims because they did not assert any claims of their own in Ater II. Although Mrs. Ater brought suit on behalf of Wendell II in Ater II, no privity exists between them. Since minors have no standing to sue prior to reaching the age of majority, they must sue through a parent or guardian, as Wendell II has done in each of the four cases at issue. Ohio courts have distinguished between actions brought by and through a parent in a representative capacity and actions brought by a parent in an individual capacity. For example, in *Whitehead v. General Telephone Co.,* 20 Ohio St.2d 108, 254 N.E.2d 10 (Ohio 1969), *overruled in part by Grava,* 73 Ohio St.3d at 382, 653 N.E.2d at 229, a minor child was injured by certain telephone equipment. Her parents filed suit for loss of her services and for medical expenses, alleging that the telephone company was negligent. After judgment was entered in favor of the telephone company, the minor, by and through her father, filed a personal injury action against the telephone company. The telephone company claimed that she should be estopped from relitigating issues identical to those involved in her parents' prior derivative action. The court found that even though the causes of action were based on the same facts, there was no identity of parties and no privity. The court found that in the prior action, the only interest involved was that of the parents. *Id.* at 115–16, 254 N.E.2d at 15.

Ohio courts have consistently held that no privity arises from the mere existence of a parent-child relationship. *See Cornell v. Brumfield,* 115 Ohio App.3d 259, 685 N.E.2d 270, 273–74 (Ohio Ct.App.1996); *Payne v. Cartee,* 111 Ohio App.3d 580, 587–88 n. 2, 676 N.E.2d 946, 951 (Ohio Ct.App.1996) (where two parties, such as a parent and child, have "a right to relief arising out of a single transaction, each such party has a separate claim for purposes of merger and bar"), *cert. denied,* 77 Ohio St.3d 1482, 673 N.E.2d 143 (1996); *Rees,* 60 Ohio App.3d at 46, 573 N.E.2d at 191.

5. Defendants appear to argue that the double dismissal rule would also bar Plaintiffs' claims against all other defendants named in Ater IV because they were either parties to the state actions, or "should have been named as parties." However, this is the wrong standard.

Furthermore, although the remaining Defendants may have been implicitly included in Ater I and Ater II by virtue of their status as "John and Jane Does," this designation is insufficient to trigger the application of the double dismissal rule. Until an individual is actually served with a copy of the complaint and summons and required to defend himself or herself, that person needs no protection from multiple lawsuits.

claims against Madison County Hospital and Dr. Hong Kim.

## B. Equitable Estoppel

In reviewing the entire case file in connection with the pending motions for summary judgment, the Court discovered a potentially outstanding issue that, in the Court's view, required resolution before the Court ruled on the motions for summary judgment. Three months after Ater IV was filed, the defendant doctors and the Madison County Hospital defendants filed motions for leave to amend their answers to assert a *res judicata* defense. (Record at 16 and 17). It was at this juncture that Defendants asserted for the first time their argument that Plaintiffs' dismissal of Ater I, Ater II, and Ater III triggered Ohio Rule of Civil Procedure 41(A), the double dismissal rule, rendering Plaintiffs' claims in Ater IV barred by the doctrine of *res judicata*.[6]

In response to the motions for leave to amend the answers, Plaintiffs contended that Defendants should be equitably estopped from asserting a *res judicata* defense because of an alleged "agreement" among counsel that Plaintiffs would not be barred from refiling their claims if they voluntarily dismissed the three actions pending in state court. Les Weisbrod, one of Plaintiffs' attorneys, attached an affidavit to the memorandum in opposition. In that affidavit, Weisbrod explained that Ater I, Ater II, and Ater III were dismissed because a trial date in Ater I was imminent, the judge was unlikely to grant a continuance, and discovery had not yet been completed. Furthermore, it did not make sense to try the three cases separately since they were interrelated. Mr. Weisbrod claims that, for these reasons, counsel for all parties agreed that voluntary dismissal of the three pending cases was appropriate, and that there would be no bar to re-filing the actions.

Weisbrod averred that on or about December 8, 1999, he conducted a conference call with his co-counsel H. Lee Thompson, defendant doctors' attorney James Carpenter, and Madison County Hospital defendants' attorney Jeffery Beausay. Weisbrod stated:

> At the time we discussed the application of Ohio's savings statute, both of these counsel for defendants agreed that there would be no bar, and that they would *not attempt to raise one, under Ohio law*—either procedural or substantive, to dismissing the pending state cases and refiling them. After this conversation, and in reliance upon counsel for defendants' representation that they believed that there was no bar to refiling, Mr. Thompson filed Rule 41 notices of dismissal . . .

(Weisbrod Aff. at 2, Ex. A to Pls.' Mem. in Resp. to Mot. for Leave to File Amd. Answer).

Counsel for Defendants vehemently denied the existence of any such agreement and claimed to be "absolutely shocked" when they read Weisbrod's affidavit. They adamantly denied the existence of any such "agreement." They also submitted affidavits of counsel. Mr. Beausay averred:

> Attorney Weisbrod did not request, nor would we have agreed to, a *stipulated* dismissal under Ohio Rule 41(A)(1)(b). It was my impression that they were considering filing a *notice* of dismissal under Rule 41(A)(1)(a) in the case set for trial. . . . I absolutely deny that I or Jim Carpenter "agreed that there would

---

6. As discussed on page 950–51 of this Memorandum & Order, the voluntary dismissal of Ater III is not at issue. That case was a declaratory judgment action filed against the hospital's insurance carrier and involved claims of an entirely different nature.

be no bar, and that they would not attempt to raise one, under Ohio law—either procedural or substantive, to dismissing the pending state cases and refiling them". That subject never came up in the telephone conversation in question. Further, I would *not* have agreed to such a proposition if asked; there would have been no reason for me to agree to that. Finally, I would not have agreed to such a proposal without obtaining the consent of our client, Madison County Hospital.

(Beausay Aff. ¶¶ 4–5, Ex. A to Reply Brief of Madison County Hospital Defs.).

Likewise, attorney James Carpenter averred:

At no time before, during, or after the December 10, 1999 telephone conference call, was I asked by Plaintiffs' counsel or anyone else to in any way consent, stipulate or agree to a dismissal by the plaintiffs of any of the three pending lawsuits or to approve or sign any entry in respect to a dismissal. At no time did I make any statement or representation that I would agree on behalf of my clients to consent to Plaintiffs dismissing any of their claims. At no time did I make any statement or representation that I would agree on behalf of my clients to any understanding that Plaintiffs would later be permitted to refile such claims.

(Carpenter Aff. ¶¶ 8–9, Ex. A to Reply Brief of defendant doctors).

After Defendants filed their reply briefs, Plaintiffs filed a surreply, noting that Defendants had invited the Court to "weigh the credibility of the various counsel involved." In the surreply, Plaintiffs backed down somewhat, claiming that Weisbrod's affidavit was included "as merely a part of the overall argument that these Defen-

dants should be estopped by the positions that they plainly took in the State Court from now arguing that the Plaintiffs' claims should be dismissed." (Surreply at 2). Plaintiffs contend that, by arguing that Plaintiffs could not amend their complaint in Ater I because the new claims were barred by the statute of limitations, Defendants necessarily took the position that the proposed amendment did not arise out of the same conduct, transaction, or occurrence as did the original action.[7] (*Id.* at 3).

According to Plaintiffs, since Defendants viewed Ater I and Ater II as separate claims, it requires no stretch of the imagination to believe that counsel would have agreed that there was no bar to dismissing the cases and re-filing them. In the surreply, Plaintiffs clarified that they do not contend that Defendants stipulated to dismissal without prejudice, but rather that Plaintiffs dismissed the suits based on Defendants' representations that they agreed with Plaintiffs' analysis that nothing would bar refiling of the claims. Attached to the surreply was another affidavit, this one of Plaintiffs' attorney H. Lee Thompson. He stated:

During the phone conversation, all four of us agreed that it would be extremely difficult to complete all of the depositions in an orderly manner prior to December 31. It was because of this that the four of us began discussing the possibility of dismissing the action and then refiling it. It was at this point that Mr. Carpenter brought up the other State Court actions and asked me if we were willing to dismiss those and refile them as well. I agreed to that. Though neither I nor Mr. Weisbrod specifically asked any of them to agree to a formal

---

7. This argument is explained more fully in the section of this Memorandum & Order dealing with judicial estoppel.

stipulation of dismissal or joint dismissal, there was a general agreement among all of us that all of the State Court actions would be dismissed and there was also general agreement that there was no bar to refiling them.

(Thompson Aff. at 2, Ex. 4 to Surreply).

That surreply was followed by a motion by the Madison County Hospital defendants to disqualify Plaintiffs' counsel and a request for a hearing to determine whether such an agreement existed. Defendants claimed that because Plaintiffs' counsel would have to testify at the hearing, the attorneys were required to withdraw as counsel of record. In response, Plaintiffs noted that they have never stated that the double dismissal rule was ever explicitly discussed during the course of the telephone conference call; rather, they contend that there was no need to discuss it because all parties agreed that the claims in the two pending suits were unrelated.[8]

Not surprisingly, Defendants disagreed. They noted that Plaintiffs have nothing in writing to corroborate the so-called "agreement." Defendants also noted that, during a status conference, when they first notified the Court that they would be requesting leave to amend their answers to assert the defense of *res judicata*, Magistrate Judge King expressly asked Plaintiffs' counsel if they would oppose such a motion. Counsel stated only that they opposed it because Defendants could have raised it when the answers were filed. The first time Plaintiffs mentioned the existence of a so-called "agreement" was in their memorandum in opposition to the motions for leave to amend the answers.

On July 18, 2001, Magistrate Judge King granted Defendants' motions to amend their answers to assert the defense

of *res judicata*. (Record at 34). She noted that "Plaintiffs contend that the defenses sought to be raised in the amended answers are legally insufficient. However, that conclusion requires resolution of the merits of the anticipated defenses and, perhaps, consideration of evidence in support of and in opposition to the defenses." In a footnote, she explained, "[f]or example, plaintiffs contend, *inter alia*, that defendants should be estopped from asserting the defenses of *res judicata* and/or collateral estoppel because of certain representations allegedly made by defense counsel. Whether or not such representations were in fact made and, further, would provide a basis for estoppel may require an evidentiary record not presently available to the Court." Defendants then proceeded to file their amended answers, asserting the defense of *res judicata*.

The four pending motions for summary judgment were filed shortly after Magistrate Judge King issued her Order granting Defendants' motions for leave to amend their answers. Although all four motions for summary judgment were based on the applicability of the *res judicata* defense, no one mentioned the unresolved dispute over the existence of the alleged "agreement" in any of the briefs. In the view of the undersigned judge, however, this equitable estoppel argument, if still being asserted by Plaintiffs, had to be resolved before the Court could rule on the motions for summary judgment. Therefore, on April 26, 2002, the Court held a status conference with counsel for all parties to discuss this issue.

At that status conference, Plaintiffs' counsel confirmed that Plaintiffs were not prepared to waive their previously assert-

---

**8.** Plaintiffs further pointed out that if an evidentiary hearing were held, defense counsel would also be called upon to testify. Plaintiffs contended that disqualification was not necessary because the testimony would not deal with any substantive issues in the lawsuit and would not be prejudicial to their clients.

ed equitable estoppel argument. The Court therefore asked the parties to submit briefs advising the Court of their respective positions regarding the need for an evidentiary hearing concerning the existence of an "agreement," the time and manner in which that hearing should take place, and the necessity of disqualifying counsel if they would be required to testify at that hearing.

The parties submitted their briefs as requested. All parties appear to agree that, if the Court were to find that a hearing is necessary, this issue should be resolved only by the judge, and not the jury, because it involves the application of an equitable defense. Although the Madison County Hospital defendants argue that Plaintiffs' counsel should be disqualified if forced to testify at an evidentiary hearing, the other parties contend that no disqualification would be necessary. Nevertheless, these issues are moot because, albeit for different reasons, the parties agree that an evidentiary hearing is neither necessary nor desirable. They all urge the Court to decide the motions for summary judgment on the merits without regard to the affidavits concerning the existence of an "agreement."

In their briefs, Plaintiffs noted that the double dismissal rule, if it applied at all, would bar only Wendell II's claims. They then argued that, since the application of the double dismissal rule to minors is unconstitutional, the Court need not consider whether an "agreement" existed in order to rule on the pending motions. The Court will consider the merits of Plaintiffs' constitutional argument in the next section of this opinion.

Defendants all argue that, even if the Court found that the parties had "agreed" that there would be no bar to refiling the claims once they were dismissed, an oral agreement would be ineffective as a matter of law to constitute a stipulation of dismissal without prejudice. As the Court previously noted, the force and effect of Plaintiffs' previous dismissals is a matter of state law. Ohio Rule of Civil Procedure 41(A)(1) clearly states that a stipulation of dismissal must be *"signed by all parties who have appeared in the action."* Defendants therefore contend that it would violate the *Erie* doctrine for this Court to conduct an evidentiary hearing and find that an oral agreement to dismiss the three pending cases without prejudice was enforceable.[9]

■■■■ In the Court's view, no hearing is necessary because Plaintiffs do not claim that there was an oral stipulation of dismissal without prejudice. Plaintiffs concede that application of the double dismissal rule was not expressly discussed during the phone conversation on December 8, 1999. Counsel discussed only the application of Ohio's savings statute. Ohio's savings statute permits refiling of a suit that would otherwise be time-barred if it is refiled within one year after "plaintiff fails otherwise than upon the merits." Ohio Revised Code § 2305.19. A voluntary dismissal under Ohio Rule of Civil Procedure 41(A)(1) constitutes a failure "otherwise than upon the merits." *Frysinger v. Leech,* 32 Ohio St.3d 38, 42, 512 N.E.2d 337, 342 (Ohio 1987). Therefore, when a plaintiff files a notice of dismissal, the plaintiff will normally be permitted to refile the suit within one year, even if it would otherwise be time-barred. However, "the saving statute can be used only once to invoke an additional one-year time period in which to refile an action." *Hancock v. Kroger,* 103 Ohio App.3d 266, 269, 659 N.E.2d 336, 338 (Ohio Ct.App.1995). There is some evidence that during the December 8, 1999 conference call, counsel

**9.** *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

may have agreed that if Plaintiffs dismissed Ater I and refiled it within one year, it would not be barred by the statute of limitations because Ohio's savings statute would provide ample protection.

However, the savings statute and the double dismissal rule are not the same; they serve very different functions. Plaintiffs have conceded that there was no express agreement concerning the applicability of the double dismissal rule. It simply was not discussed at all. Plaintiffs do contend that Defendants' silence concerning the applicability of the double dismissal rule was evidence of, and consistent with, an "implied understanding" between the parties that, because Ater I and Ater II did not involve the "same claim," there would be no bar to re-filing and no stipulated dismissal was necessary.[10]

▮▮▮ To the extent that Plaintiffs appear to be arguing that this "implied understanding" is still sufficient to support a claim of equitable estoppel, the Court disagrees. " 'Estoppel by misrepresentation, or equitable estoppel . . . arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.' " *Fleming v. Steubenville* (1931), 44 Ohio App. 121, 125, 184 N.E. 701 (Ohio Ct.App.1931).

▮▮▮ Plaintiffs claim to have relied to their detriment on Defendants' silence concerning the applicability of the double dismissal rule. However, where a plaintiff seeks to rely on a defendant's silence rather than on a factual misrepresentation in

support of a claim of equitable estoppel, the plaintiff must show that the defendant had a duty to speak. *See Minnesota Mining & Mfg. Co. v. Blume,* 533 F.Supp. 493, 517 (S.D.Ohio 1979). In this case, Plaintiffs have conceded that defense counsel had no duty to warn them of the legal implications of dismissing their three pending cases. Furthermore, in the Court's view, there is no evidence of bad faith on the part of defense counsel; it does not appear that the applicability of the double dismissal rule and the *res judicata* defense ever occurred to defense counsel until many months after the December 8, 1999 conference call. The Court also notes that, even if, during that phone call, defense counsel had expressly concurred in Plaintiffs' belief that the double dismissal rule would not bar refiling of Plaintiffs' claims, Plaintiffs' reliance on defense counsels' opinion would not have been reasonable.

In many ways, the Aters' claim of equitable estoppel is very similar to that raised by the plaintiff in *Heskett v. Paulig,* 131 Ohio App.3d 221, 722 N.E.2d 142 (Ohio Ct.App.1999). The issue in that case was whether an oral agreement not to assert an affirmative defense was enforceable. Beatrice Heskett had filed a legal malpractice action against her former attorney. The first suit was dismissed by order of the court; Plaintiff then refiled the case. Plaintiff contended that, at a scheduling conference that took place during the pendency of this second case, defense counsel orally agreed that no procedural bar would prohibit her from again dismissing the case and refiling it in another court. Defense counsel later denied that he had agreed to waive any future defenses. Based on the alleged agreement, Plaintiff

---

**10.** Plaintiffs further claim that the position Defendants took in state court in opposing Plaintiffs' motion for leave to amend their complaint is consistent with this "implied understanding." This argument will be discussed in more detail in the judicial estoppel section of this Memorandum & Order.

filed a notice of dismissal pursuant to Rule 41(A)(1) and, more than a year later, re-filed the case in another court. Defendant later filed a motion to dismiss the third suit, arguing that Plaintiff's third suit was time-barred and the savings statute was inapplicable because she had waited more than one year to refile the case. The trial court agreed that Defendant was legally correct, but held that, because of the alleged agreement between counsel concerning waiver of affirmative defenses, Defendant was equitably estopped from arguing that the case should be dismissed on statute of limitations grounds.

On appeal, Defendant argued that the trial court erred in denying his motion to dismiss. The appellate court agreed that the third suit was time-barred, but struck down the trial court's holding concerning the equitable estoppel defense, noting that when the second suit was dismissed, "both parties were under the mistaken assumption that there were no legal barriers to filing the case for a third time. Had the parties known the true state of the law ... the second dismissal would never have occurred." 131 Ohio App.3d at 224, 722 N.E.2d at 144. The court noted that equitable estoppel may bar a defendant from asserting a defense if a plaintiff can show: "(1) the defendant made a factual misrepresentation; (2) that is misleading; (3) that induces actual reliance that is reasonable and in good faith; and (4) that causes detriment to the relying party." *Id.* at 227, 722 N.E.2d at 146 (*quoting Walworth v. BP Oil Co.*, 112 Ohio App.3d 340, 345, 678 N.E.2d 959, 963 (Ohio Ct.App.1996)). Because the nature of defendant's alleged misrepresentation concerning the applicability of any affirmative defenses which might bar refiling of Plaintiff's claims was not *factual*, but rather was based on a *mutual mistake of law*, the court found that the alleged misrepresentation could not give rise to a claim of equitable estoppel. *Id.* at 227, 722 N.E.2d at 146–147.

The court noted that permitting parties to assert a defense of equitable estoppel, based on their attorneys' failure to research or understand the applicable law "would purport to bind the courts to the parties' mistaken understanding of the law." *Id.* at 228, 722 N.E.2d at 147. The court stated,

Here, appellant's attorneys argued that appellee's counsel had given them his

"professional statement" that he knew of no legal barriers to a third filing of the case. One of appellant's attorneys stated that appellee's later assertion of the saving statute preclusion exhibited a "lack of integrity" in which he was "extremely disappointed." The trial court apparently rejected this argument, and we raise it only to observe that it was primarily the responsibility of appellant's attorneys to determine the state of the law relevant to dismissing their client's claim. Appellant's attorneys knew (or should have known) that they would have to rely on the saving statute in order to file this case in Logan County. Ascertaining the applicable law and gauging the possible risk to a given cause of action prior to any dismissal under Civ.R. 41 are precisely the kind of decisions that attorneys cannot delegate to opposing counsel or the courts. As a result, it is our conclusion that neither the appellee or the courts can be compelled to bear the consequences of appellant's counsel's apparent failure to make those evaluations in this case.

*Id.*

Of course the case at hand is distinguishable because, as Plaintiffs now concede, counsel did not discuss the applicability of the double dismissal rule during the phone call at issue. Therefore, there was no "mutual mistake of law" as there was in *Heskett.* As this Court has already noted, defense counsels' silence concerning this

issue is insufficient to support a claim of equitable estoppel; defense counsel had no duty to warn Plaintiffs' counsel of the legal implications of filing voluntary notices of dismissal. This Court agrees with the reasoning of the court in *Heskett*. Responsibility for ascertaining the legal consequences of voluntarily dismissing Ater I, Ater II, and Ater III fell squarely on the shoulders of Plaintiffs' counsel and, even if defense counsel had expressed their opinion that there would be no bar to refiling the claims, Plaintiffs' counsels' reliance on those statements would not have been reasonable.

For these reasons, the Court finds no support for Plaintiffs' claim of equitable estoppel, and very little evidence of the alleged "implied understanding" concerning the applicability of the double dismissal rule. Since Plaintiffs have conceded that Defendants did not orally agree to a stipulation of dismissal without prejudice, and have conceded that counsel did not discuss the application of the double dismissal rule during the December 8, 1999 phone conference, there is no need for the Court to hold an evidentiary hearing to determine whether Defendants agreed not to raise the affirmative defense of *res judicata*.

■■■■ The other argument asserted by the Madison County Hospital defendants is rendered moot by this Court's finding that there is no basis for an equitable estoppel claim. However, for the sake of completeness, the Court will briefly discuss it. The Madison County Hospital defendants argue that, even if an agreement to waive the application of the double dismissal rule existed, the parties had no authority to waive the prohibition against repeated use of Ohio's savings statute, conferring subject matter jurisdiction on this Court where it would otherwise not exist. This argument is inapplicable because the Aters have not used Ohio's savings statute on more than one occasion.

In support of their argument, Defendants cite to the case of *Neal v. Maniglia*, No. 75566, 2000 WL 354767, 2000 Ohio App. Lexis 1542 (Ohio Ct.App. April 6, 2000). In that case, a medical malpractice claim was filed and then voluntarily dismissed. It was then refiled within one year, pursuant to Ohio's savings statute. After defendants agreed to waive the double dismissal rule, plaintiffs again dismissed the case. When plaintiffs attempted to file the third lawsuit, the trial court dismissed it *sua sponte* as time-barred. The appellate court affirmed, holding that the parties could not agree to waive the double dismissal rule to confer subject matter jurisdiction that was otherwise lacking. *Id.* at *2, 2000 Ohio App. Lexis 1542, at *8. The Court noted, "[o]n dismissal of the second suit the plaintiff was outside of the statute of limitations. The Savings Statute was no longer available to extend the filing time of yet another suit. The statute may not be relied upon to indefinitely keep a cause of action alive." *Id.* at *2, 2000 Ohio App. Lexis 1542, at *7.

*Neal,* however, is distinguishable from the case at bar. In *Neal,* the plaintiff had already used the savings statute to extend the statute of limitations once. Therefore, even if the opposing party did agree to waive application of the double dismissal rule, the suit was time-barred because the statute of limitations had run and the plaintiff had already used the savings statute to extend it on one occasion. In the Ater's case, on the other hand, the prohibition against repeated use of the savings statute is not implicated. They simultaneously dismissed all three of their cases pending in state court and then refiled suit in federal court within one year. In other words, although they dismissed three separate suits, Plaintiffs took advantage of the savings statute on only one *occasion*.

■ Because Plaintiffs were able to take advantage of the savings statute, Ater IV is not barred by the statute of limitations and this Court's subject matter jurisdiction is therefore not threatened as the court's was in *Neal.* Res judicata and the application of the double dismissal rule are affirmative defenses. While application of the double dismissal rule could potentially ultimately deprive Plaintiffs of the right to recover, an agreement to waive these affirmative defenses would not strip this court of subject matter jurisdiction. *See Neal,* 2000 WL 354767, at *5, 2000 Ohio App. Lexis 1542 at *17–*18 (Kilbane, J., dissenting); *see also Markham v. Earle M. Jorgensen Co.,* 138 Ohio App.3d 484, 500 n. 8, 741 N.E.2d 618, 630 (Kilbane, J., concurring in judgment) ("expiration of ninety-day statutory limitations period does not deprive the trial court of subject matter jurisdiction").

In summary, Plaintiffs in this case have conceded that Defendants made no factual misrepresentation concerning the applicability of the double dismissal rule to bar refiling of Plaintiffs' claims. Plaintiffs argue instead only that there was an "implied understanding" that the double dismissal rule would not be implicated because Ater I and Ater II did not involve the "same claim." In the Court's view, even if there were some basis for believing that this "implied understanding" existed, it would be insufficient to support a claim of equitable estoppel. Furthermore, even if Defendants had expressly stated that they did not believe that the double dismissal rule would bar refiling, Plaintiffs' counsel could not claim a reasonable and good faith reliance on these statements, because they had an independent duty to research the potential legal consequences of the dismissals. Finding no basis to support Plaintiffs' claim of equitable estoppel, and no need for an evidentiary hearing to determine whether an "agreement" existed, the Court will proceed to rule on the merits of the motions for summary judgment.

## C. Motions for Summary Judgment

### 1. Summary of Parties' Arguments

Defendants have moved the Court for summary judgment on grounds of *res judicata.* They contend that Ater I and Ater II involved the "same claim"—a medical malpractice claim seeking to recover for birth defects sustained by Wendell II. Therefore, according to Defendants, Plaintiffs' voluntary dismissal of Ater I and Ater II implicated the double dismissal rule and operated as an adjudication on the merits, barring Plaintiffs' current claims under the doctrine of *res judicata* or claim preclusion.

Plaintiffs have also moved for summary judgment on the issue of the applicability of the *res judicata* defense. Plaintiffs contend that the double dismissal rule is completely inapplicable. According to Plaintiffs, Ater I and Ater II cannot be construed as the "same claim" because they did not arise from a common nucleus of operative facts. In Ater I, Plaintiffs alleged that Wendell II's birth defects were caused by the negligent administration of Depo–Provera in the early stages of Mrs. Ater's pregnancy. In Ater II, they alleged that Wendell II's birth defects were caused by Defendants' failure to properly diagnose and treat fetal distress during the final 72 hours of the pregnancy.

Plaintiffs further note that the parties in Ater I and Ater II are different. They argue that, if the double dismissal rule applies at all, it would bar only Wendell II's claims against Madison County Hospital and Dr. Hong Kim. Plaintiffs then claim that it would be unconstitutional to apply the double dismissal rule to bar Wendell II's claims since the statute of limitations on his medical malpractice claims is tolled until he reaches the age of

majority. Finally, Plaintiffs argue that Defendants should be judicially estopped from asserting the *res judicata* defense since they took a contrary position in state court by arguing that Plaintiffs should not be given leave to amend their complaint in Ater I. The Court will discuss the merits of this argument first.

### 2. Judicial Estoppel

Judicial estoppel operates to preclude a party from asserting a position that conflicts with a position earlier taken in the same or related litigation. *See New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). In their motions for summary judgment, Plaintiffs claim that Defendants should be judicially estopped from arguing that the claims in Ater I and Ater II were the same.

In Ater I, Defendants successfully argued that Plaintiffs should not be permitted to amend their complaint to assert the claims raised later in Ater II because the new claims were time-barred. Plaintiffs contend that, by arguing that the new claims were time-barred, Defendants necessarily took the position that the new claims did not arise out of the same transaction or occurrence as the original action. Plaintiffs' logic flows as follows. Because Wendell II was a minor, and the statute of limitations for medical malpractice claims is tolled until minors reach the age of majority, his proposed new claims could not have been time-barred. Plaintiffs then argue that, as to Wendell II, the only possible basis for Defendants to argue that the complaint should not be amended—and the only possible basis for the state court to deny the motion for leave to amend—was that the new claims did not arise out of the same transaction or occurrence that

was the subject matter of the previous complaint.[11] Plaintiffs contend that, because the statute of limitations did not bar Wendell II's claims, if his claims asserted in Ater I were not separate and distinct from his claims as alleged in the proposed amended complaint, surely the state court would have combined them.

While Plaintiffs' argument may have some appeal, there is no support for it in the record. This Court has read the briefs Defendants submitted in response to the motion for leave to amend the complaint in Ater I and finds no such argument set forth, either expressly or impliedly. Madison County Hospital argued only that the claim against the insurance company should not be intermingled, that it was too late to substitute the nurses for the Jane Doe defendants, and that no facts had been established that would entitle Plaintiffs to punitive damages. Dr. Hong Kim and Dr. Sooja Kim concurred with those arguments. They also argued that the purpose of requiring amendment within one year is to avoid the additional discovery and inevitable delays that would result from the interjection of new parties late in the litigation. The parties' briefs are completely silent concerning the statute of limitations for Wendell II's medical malpractice claims.

Furthermore, as this Court reads the state court's order denying the motion for leave to amend the complaint, that denial was based solely on the fact that Plaintiffs' claims were time-barred because they had failed to amend their complaint within one year to substitute the nurses for the Jane Doe defendants, as required by Ohio Rules 3 and 15. There is absolutely no indication that the court considered the nature of the claims, or the applicability of the statute of

---

11. As noted earlier, the proposed amended complaint contained claims arising out of the management of Mrs. Ater's labor, while the claims contained in Ater I concerned the administration of Depo–Provera during the very early stages of Mrs. Ater's pregnancy.

limitations to Wendell II's claims, in denying the motion for leave to amend.[12] In short, there is no support for Plaintiffs' claim that Defendants took a contrary position in state court and no basis for finding that Defendants should be judicially estopped from asserting a *res judicata* defense.

### 3. Constitutionality of the Application of the Double Dismissal Rule to Minors

Plaintiffs also urge the Court to grant their motions for summary judgment based on a finding that the application of the double dismissal rule to bar re-filing of a minor's medical malpractice claim would violate Ohio's Constitution. In support of their argument, Plaintiffs cite to *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 503 N.E.2d 717 (Ohio 1986). In *Mominee*, the Ohio Supreme Court held that a statute which required minors to bring medical malpractice claims within one year of the date the cause of action accrued, or four years from the date the alleged malpractice occurred, whichever came first, was unconstitutional because it unfairly penalized blameless minors. *See* 28 Ohio St.3d at 277, 503 N.E.2d at 723. The Court specifically rejected the argument that once children reached the age of majority, they could sue their parents for failing to bring a medical malpractice action on their behalf. The Court noted that requiring young adults to choose between abandoning medical malpractice claims or suing their parents had a chilling effect on their due process rights, and would necessitate litigation of stale claims because parental negligence could be shown only with by proving that the underlying malpractice action had merit. *Id.* at 276, 503 N.E.2d at 722. Plaintiffs also cite to *Taylor v. General Motors Corp.*, 717 So.2d 747, 750 (Miss.1998), in which the court upheld dismissal of a case, but noted that as to the minor plaintiff, the dismissal was without prejudice because the statute of limitations on his claim did not begin to run until he reached the age of majority. *See also Mosley v. Lankford*, 244 Ga. 409, 410–11, 260 S.E.2d 322 (1979) (holding that court erred in dismissing minor's claims with prejudice absent a hearing). Plaintiffs argue that the same policy considerations implicated in *Mominee* prohibit the application of the double dismissal rule to minors; to cut off the rights of Wendell II, who had no say in the dismissal of the previous actions, would be unfair, and he should not be required to sue his parents to obtain relief.

 In the Court's view, Plaintiffs' argument does have *some* merit. Courts do have a special duty to protect the rights of minors, who lack the means to protect their own legal interests. Obviously, the purpose of extending the statute of limitations until minors reach the age of majority is to protect those minors whose parents or guardians fail to assert the minor's claim within the regular statute of limitations. *See Millsap v. Jane Lamb Memorial Hosp.*, 111 F.R.D. 481, 483 (S.D.Iowa

**12.** The state court's order, in its entirety, reads, "Plaintiffs herein moved the Court for an order granting them leave to file an amended complaint to substitute parties defendant for Jane and John Does. The addition of such parties defendant is time-barred. Notwithstanding the stay issued herein, plaintiffs have allowed 582 days to elapse before seeking to add parties. Plaintiffs' Motion to assert a claim for punitive damages six months after this case had previously been assigned for trial is inappropriate. Plaintiffs' Motion to amend their complaint is Overruled. Counsel are reminded that failure to file a discovery schedule will cause the Court *sua sponte* to issue its own without deference to counsel's schedules. Judgment is entered accordingly." (Ex. E to Pls.' Response to Defs.' Mot. for Leave to File Amd. Answer).

1986). However, once suit is filed on behalf of a minor child, the parents and guardians are generally subject to the same rules of civil procedure as all other litigants. *Id.*

Plaintiffs have cited no clear authority for the proposition that the "double dismissal" rule should not be applied to minors. Indeed, while it is true that courts are generally reluctant to dismiss, for procedural defects, actions brought on behalf of minors, courts are also mindful of the rights of the other litigants and do act to protect those interests. For example, in *Bernstein v. Gottlieb Memorial Hospital,* 185 Ill.App.3d 709, 134 Ill.Dec. 20, 542 N.E.2d 20 (1989), a juvenile, through his parents, had brought four different medical malpractice actions against a doctor, a nurse, and hospital. Illinois had a savings statute which permitted a plaintiff who had voluntarily dismissed a complaint to commence a new action "within one year or within the remaining period of limitation, whichever is greater." Ill.Rev.Stat.1987, ch. 110, par. 13–217. Since the plaintiff was a minor, and the statute of limitations did not run until four years after he reached the age of majority, the statute appeared to permit the minor to renew his claim an unlimited number of times during his infancy. Defendants objected and urged the court to apply Illinois' double dismissal rule and dismiss the case on *res judicata* grounds.

The trial court reluctantly denied defendants' motion to dismiss, believing itself bound by precedent. On appeal, the court reversed, finding that defendants' motion should have been granted. It cited with approval a portion of the trial court's opinion in which the trial court had expressed the reasons for its reluctance to deny the motion to dismiss:

> Surely the courts must protect the rights of minors. Because they are minors, by law they may sue in general

until they attain the [age of] 20, or the usual limitation period expires. But once the minor invokes the aid of the court, then he/she is treated much like an adult, since represented by a "next friend," typically, as here, a parent and counsel. The minor is expected to file proper pleadings, to respond in discovery, to appear for deposition (depending on age), appear as a witness, etc. The usually [sic] rules of res judicata apply to the minor. Indeed, the rules could scarcely be otherwise, else a defendant could be subjected to intolerable burdens.

> In the case of the adult plaintiff, the right to refile within the statute has little meaning; typically the limitation period is short, two years for personal injury, and by the time the suit is refiled, he/she must use Sec. 13– 217 and is restricted to one filing. But here plaintiff was only four when the first suit was filed. Moreover, counsel declares that plaintiff is incompetent, and if this is true, there may never be a limitation period during his life. Thus, plaintiff could continue to dismiss and refile.

134 Ill.Dec. 20, 542 N.E.2d at 26. The appellate court noted that minors must be regarded with "special interest" and be protected from situations where the minor's parents neglect to take action on the minor's behalf. *See id.* 542 N.E.2d at 24. However, the court noted that this was not a case in which the parents had neglected to file suit—"[h]ere, action has been taken, albeit too often." *Id.*

Likewise, in *Kubiak v. Robert Wood Johnson University Hospital,* 332 N.J.Super. 230, 753 A.2d 166 (App.Div.2000), the court noted that tolling statutes are designed to protect the legal rights of minors. However, once a parent pursues a claim on behalf of a minor, that parent "steps into the shoes of the minor and is

obligated to comply with court rules and applicable statutes. In short, a minor is protected from a parent's ... inaction, but not from their improvident actions in the course of litigation." *Id.* at 170.

■■■ To permit a parent, guardian, or next friend to repeatedly dismiss and refile claims on behalf of a minor during the entire period of time the statute of limitations is tolled, without any legal repercussions whatsoever, would subject defendants to an "intolerable burden." This problem is even more pronounced where, as here and in the *Bernstein* case, the minor also suffers from a disabling physical or mental condition that renders the minor permanently incompetent and could toll the statute of limitations indefinitely. Because this Court agrees with the reasoning set forth in *Bernstein* and *Kubiak,* the Court finds that the application of the double dismissal rule to minors is not unconstitutional *per se.* The Court will therefore proceed to determine whether that rule bars Wendell II's claims against Madison County Hospital and Dr. Hong Kim in the instant action.

### 4. Double Dismissal Rule as Applied to Wendell II's Claims

Defendants contend that Plaintiffs' voluntary dismissal of Ater I, Ater II, and Ater III triggered Ohio Rule of Civil Procedure 41(A), the double dismissal rule, and that Plaintiffs' claims are therefore barred by the doctrine of *res judicata.* As noted earlier, prior to its recent amendment, the double dismissal rule stated, in pertinent part, "[u]nless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, *except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed, in any court, an action based on or including the same claim."* Ohio R.Civ.P. 41(A) (emphasis added). According to Defendants,

Ater I and Ater II involved the "same claim." They therefore contend that, even though Plaintiffs filed a notice of dismissal "without prejudice" in Ater II, this language was ineffective to evade the automatic application of the double dismissal rule.

At the outset, the Court notes that Ater III, in which Plaintiffs sought a declaratory judgment construing obligations under the hospital's insurance policy, is of a completely different nature than the claims involved in Ater I, Ater II, or Ater IV. Even though the declaratory judgment action relied on the same factual foundation as the medical malpractice actions, the issues are completely separate and distinct. *See Hershiser v. BOS Corp.,* 69 Ohio App.3d 186, 188, 590 N.E.2d 323, 324 (Ohio Ct.App.1990) (holding that plaintiff's dismissal of personal injury action and subsequent dismissal of declaratory judgment action concerning extent of tortfeasor's insurance coverage did not trigger double dismissal rule).

The only relevant inquiry, therefore, is whether the claims contained in Ater I and Ater II are sufficiently similar to invoke the double dismissal rule. Defendants argue that the claims Plaintiffs asserted in Ater I are substantially the same as those asserted in Ater II. In both cases, Plaintiffs asserted medical malpractice claims seeking to recover damages for birth defects allegedly suffered by Wendell II in connection with Mrs. Ater's pregnancy, labor and delivery. According to Defendants, the treatment accorded Mrs. Ater and the treatment accorded Wendell II prior to his birth are inherently inseparable. Defendants therefore claim that because the dismissal of Ater II operated as an adjudication on the merits, the current suit is now barred by the doctrine of *res judicata* or claim preclusion.

Plaintiffs, however, contend that the "double dismissal" rule was never triggered because Ater I and Ater II did not involve the "same claim." In Ater I, Plaintiffs alleged that Defendants negligently performed a pregnancy test and negligently administered Depo Provera to Cheryl Ater in the very early stages of her pregnancy, causing Wendell II's birth defects. In Ater II, on the other hand, Plaintiffs claimed that the birth defects were caused by Defendants' failure to diagnose Wendell II's fetal distress, failure to deliver him in a timely manner, and failure to timely resuscitate him after delivery.[13] The events giving rise to the medical malpractice claims asserted in Ater I and Ater II took place many months apart.

In determining whether a subsequent complaint involves the "same claim" for purposes of the double dismissal rule, Ohio courts have adopted the claim preclusion standards set forth by the Ohio Supreme Court in *Grava v. Parkman Township.* *See, e.g., Forshey v. Airborne Freight Corp.,* 142 Ohio App.3d 404, 755 N.E.2d 969 (Ohio Ct.App.2001); *Fouss v. Bank One, Columbus,* No. 96APE01–57, 1996 WL 361969 (Ohio Ct.App. June 27, 1996); *Stewart v. Fifth Third Bank of Columbus,* No. 00AP–258, 2001 WL 58727 (Ohio Ct. App. Jan. 25, 2001); *Farm Credit Serv. of Mid–America v. Mikesell,* No. 96 CA 11, 1997 Ohio App. Lexis 2325 (Ohio Ct.App. May 14, 1997).

In *Grava,* the court held that a "valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." 73 Ohio St.3d at 382, 653 N.E.2d at 229. The court explicitly adopted Sections 24 and 25 of the Restatement of Judgments, explaining as follows:

Section 24(1) of the Restatement of Judgments ... provides: "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ***, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." ... Comment b to Section 24 of the Restatement of Judgments ... defines a "transaction" as a "common nucleus of operative facts." Comment c to Section 24, at 200, plainly states: "That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."

Section 25 of the Restatement of Judgments ... further explains: "The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." ...

*Id.* at 382–83, 653 N.E.2d at 229 (internal citations omitted).

In addition to the portions of the Restatement of Judgments cited by the court in *Grava,* other portions of the adopted sections provide further guidance for determining whether two claims are the

---

**13.** It appears that once Plaintiffs had experts evaluate the relevant medical records, the focus of the allegations shifted.

same. For example, section 24(2) of the Restatement of Judgments states:

What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Likewise, comment b to Section 24 of the Restatement of Judgments notes that it is appropriate to ask "how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first."

Many years earlier, in paragraph four of the syllabus in *Norwood v. McDonald,* 142 Ohio St. 299, 52 N.E.2d 67 (Ohio 1942), the Ohio Supreme Court held that "[t]o determine whether a second action is based upon the same cause of action as that litigated in a former action claimed to be a bar to the second action under the doctrine of res judicata, the primary tests are the identity of investitive facts creating the right of action in each case; the identity of the evidence necessary to sustain each action; and the accrual of the alleged right of action at the same time." While *Grava* expressly overruled other portions of *Norwood,* paragraph four of its syllabus was left intact. *See* 73 Ohio St.3d at 382, 653 N.E.2d at 229. Just a few years ago, in connection with a collateral estoppel claim, the Ohio Supreme Court again cited with approval that particular paragraph from *Norwood. See Fort Frye Teachers Assoc. v. State Employment Relations Bd.,* 81 Ohio St.3d 392, 396, 692 N.E.2d 140, 145 (Ohio 1998); *see also Federated Management Co. v. Latham & Watkins,* 138 Ohio App.3d 815, 828, 742 N.E.2d 684, 693 (2000) (in determining whether two cases involve the same cause of action, the court

must consider the facts that create the cause of action and the evidence needed to sustain each action). This paragraph in *Norwood* appears to be consistent with the Restatement of Judgments view; in determining whether two claims are the same, the court should consider the overlap of the facts and witnesses necessary to sustain each claim.

█ Applying the above principles to the facts of this case, the Court concludes that the allegations of medical malpractice contained in Ater I and Ater II did not arise from a "common nucleus of operative facts," and the double dismissal rule, therefore, is not implicated. It can be argued, of course, as Defendants do, that the Restatement language cited in *Grava* supports a finding that Ater I and Ater II involved the same claim because both suits were medical malpractice actions seeking to recover for injuries sustained by Wendell II as a result of Defendants' alleged negligence. Although Ater I and Ater II asserted different claims concerning the cause of Wendell II's birth defects, it could be argued that the two claims should be construed as part of the same series of connected transactions. The right of action in both cases accrued at the same time, when Wendell II's parents discovered the existence of his birth defects. For these reasons, Defendants make a plausible argument that the dismissals of Ater I and Ater II involved the "same claim" and triggered the double dismissal rule.

However, if the Court considers whether the same facts would sustain both theories of medical malpractice and "are related in time, space, origin, or motivation," the Court reaches a different conclusion. First, the factual allegations set forth in Ater I and Ater II are not temporally related. They focus on events that took place at opposite ends of Mrs. Ater's pregnancy. The bulk of the allegations in Ater

I, concerning the negligent pregnancy screening and the administration of Depo Provera, arise from events that took place before Mrs. Ater even knew that she was pregnant. The allegations contained in Ater II, concerning negligent management of labor and delivery, and negligent treatment of Wendell II after he was born, obviously arise from events that took place many months later. Second, the factual allegations set forth in Ater I and Ater II are not spacially related and do not appear to have a common origin. Although not clear from the record, it does not appear that Mrs. Ater's pregnancy test or the administration of Depo–Provera took place at Madison County Hospital, where she later gave birth to Wendell II and where the negligent acts alleged in Ater II occurred.

A cursory look at the defendants named in Ater I and in Ater II also reveals the very different nature of the claims asserted. While many of the defendants named in Ater I were involved in the allegedly negligent pregnancy screening, all of the defendants named in Ater II were health care professionals involved in Mrs. Ater's labor and delivery at Madison County Hospital. The evidence that Plaintiffs would have to present to support the allegations contained in Ater I is very different from the evidence they would have to present to support the allegations contained in Ater II. Even though the evidence concerning Plaintiffs' damages and the ultimate outcome of the alleged medical malpractice would be nearly identical in both cases, the evidence needed to show the duty of care owed, the breach of that duty, and causation would be completely different. For example, to support the medical malpractice claims set forth in Ater I, Plaintiffs would need to present evidence concerning the administration of the pregnancy screening test, the harmful effects of Depo–Provera on a fetus, and proper monitoring of a pregnancy where

the mother had been given that drug. However, evidence to support the allegations contained in Ater II would focus on the duty of the health care professionals to diagnose fetal distress and take appropriate action to prevent harm to the baby, both before and after the birth. These considerations all support a finding that the allegations of medical malpractice contained in Ater I and Ater II did not arise from a "common nucleus of operative facts," and that the double dismissal rule was therefore not triggered.

Certain policy considerations also factor into this Court's decision that applying the double dismissal rule to bar Wendell II's claims against Madison County Hospital and Dr. Hong Kim is inappropriate in this case. In *Poloron Products, Inc. v. Lybrand Ross Brothers & Montgomery*, 534 F.2d 1012 (2d Cir.1976), the Court noted:

> ... the primary purpose of the "two dismissal" rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action ... The "two dismissal" rule is an exception to the general principle, contained in Rule 41(A)(1) ... that a voluntary dismissal of an action does not bar a new suit based upon the same claim. Where the purpose behind the "two dismissal" exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly.

*Id.* at 1017 (internal citations omitted).

This principle concerning strict construction of the double dismissal rule has been applied by several other appellate courts. For example, in *TCW Special Credits v. Fishing Vessel Chloe Z*, No. 99–15136, 2000 WL 1277922 (9th Cir. Sept.8, 2000), the court refused to strictly con-

strue the double dismissal rule to bar plaintiff's claims where the dismissal of one of the cases was preceded by discussions and a "tacit agreement" between the parties concerning dismissing the case in order to refile it in a more convenient forum. *Id.* at \*2. Likewise, in *Sutton Place Development Co. v. Abacus Mortgage Investment Co.*, 826 F.2d 637, 641 (7th Cir.1987), the court refused to apply the double dismissal rule where it was clear that all parties understood that plaintiff was dismissing the suit not to harass the defendant, but rather to consolidate it with other pending litigation.

The Court finds that, under the circumstances presented here, application of the double dismissal rule is not warranted. In the Court's view, Plaintiffs have not unreasonably abused their right to unilaterally dismiss an action nor acted with the purpose of harassing Defendants. Only days before Plaintiffs dismissed Ater I, Ater II, and Ater III, all counsel participated in a telephone conference call. During that call, Plaintiffs' counsel discussed the reasons they were considering dismissing at least one of the pending cases and defense counsel agreed that there would be no bar under Ohio's savings statute to refiling the claim. Even though the Court has found no basis for believing that the parties reached an "agreement" or that there was an "implied understanding" concerning whether dismissal of Ater I and Ater II would trigger the application of the double dismissal rule, the fact remains that Plaintiffs' counsel did confer with Defendants' counsel prior to dismissing the claims. In this sense, as in *TCW Special Credits* and *Sutton Place,* the dismissals were not completely unilateral, and there is no evidence in the record that Plaintiffs acted with the intent of harassing Defendants. Finally, the Court notes that application of the double dismissal rule would be particularly harsh in this case because Plaintiffs attempted to amend their complaint in Ater I, but the state court would not permit them to do so.

For all of the reasons set forth above, under the circumstances presented here, the Court finds, as a matter of law, that Ater I and Ater II did not involve the "same claim" for purposes of triggering the double dismissal rule. There are no genuine issues of material fact. Since Defendants have failed to prove a final, valid adjudication on the merits to satisfy the first element of the affirmative defense of *res judicata,* their motions for summary judgment must be denied and Plaintiffs' motions must be granted.

## IV. Conclusion

Finding no basis to support Plaintiffs' claim of equitable estoppel, the Court finds that no evidentiary hearing is needed to determine whether an "agreement" existed concerning the applicability of the double dismissal rule. For the reasons set forth above, Plaintiffs' motions for summary judgment concerning the applicability of the *res judicata* defense (Record at 42 and 43) are **GRANTED** and Defendants' motions for summary judgment (Record at 40 and 49) are **DENIED.**

On September 14, 2001, this Court issued an Order dismissing five pending motions without prejudice to renewal upon the resolution of the motions for summary judgment. These included: (1) Madison County Hospital defendants' motion to disqualify Plaintiffs' counsel (Record at 29); (2) Plaintiffs' motion to compel the deposition of Dr. Hong Kim (Record at 13); (3) Defendants' motions to bifurcate the negligent credentialing claims (Record at 18 and 19); and (4) Madison County Hospital defendants' motion for an oral hearing concerning bifurcation (Record at 20).

The motion to disqualify Plaintiffs' counsel (Record at 29) is rendered moot by this Memorandum & Order. However, if any

of the parties desire to renew any of the other four previously dismissed motions, they shall do so within fifteen (15) days of the date of this Memorandum & Order.

**IT IS SO ORDERED.**